IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| THOMAS E. SANTONI | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:20-cv-00975 |
| | ) | |
| SARAH ELIZABETH MUELLER AND | ) | JURY TRIAL DEMANDED |
| DOES #1-3, INCLUSIVE | ) | |
| | ) | Judge Eli Richardson |
|     Defendants. | ) | Magistrate Jeffery S. Frensley |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, TO STAY DISCOVERY, AND FOR ATTORNEY FEES AND SANCTIONS**

## INTRODUCTION

Ms. Sarah Mueller hereby responds to Plaintiff Thomas Santoni's Verified Complaint and submits this Memorandum of Law in support of the relief she requests. First, personal jurisdiction over Ms. Mueller is not proper in Tennessee because she did not live here at the time of any of the acts alleged in the Verified Complaint, and she did not direct any acts toward Tennessee while residing outside the state. Second, even if the Court determines that Tennessee may exercise personal jurisdiction over Ms. Mueller, three of Plaintiff's claims suffer from fatal pleading defects and should be dismissed under Federal Rule of Civil Procedure 12(b)(6). Further, if the Court determines that personal jurisdiction is proper as an initial matter, Ms. Mueller would request relief under the Tennessee Public Participation Act, including a stay of discovery and an award of attorney fees and sanctions, because this action was filed in response to her exercise of her First Amendment rights.

1

# MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(2) FOR LACK OF PERSONAL JURISDICTION

## I. STATEMENT OF FACTS

Ms. Mueller lived in Tennessee from 2011 to early 2015. (Exh. 1—Declaration.) She then moved to Florida. (*Id.*) Ms. Mueller returned to Tennessee in March 2017 and lived in Tennessee until March of 2018 before moving to Arizona. (*Id.*) At the time Ms. Mueller first began to correspond with Plaintiff— on or about December 2017—she was preparing to move to Arizona. (*Id.*) Ms. Mueller moved to Arizona in March of 2018 and has resided there ever since. (*Id.*) All of the conduct complained of in Plaintiff's Verified Complaint occurred while Ms. Mueller was living in Arizona and some of the acts complained of never occurred at all. (*Id.*) Further, all of Plaintiff's "counterparties" with which Ms. Mueller corresponded were located in the state of New York. (*Id.*) Therefore, as discussed below, Ms. Mueller lacks sufficient minimum contacts with the state of Tennessee and an exercise of personal jurisdiction over her in this state would be unconstitutional.

## II. LEGAL STANDARD

When a defendant challenges personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "[t]he plaintiff bears the burden of making a prima facie showing of the court's personal jurisdiction over the defendant." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). The plaintiff may not rely on the pleadings alone but must set forth specific facts establishing personal jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991) (citing *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 930 (6th Cir.1974)). There are two kinds of personal jurisdiction that may be exercised over a defendant: general and specific. *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006). General jurisdiction exists when the defendant's contacts with

the forum state are "substantial" and "continuous and systematic," such that the state may exercise personal jurisdiction even if the action does not relate to the defendant's contacts with the state. *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). Specific jurisdiction exists when the contacts giving rise to jurisdiction relate to the claim that is before the court. *Id.* These contacts must have been purposefully established by the defendant and the exercise of personal jurisdiction must not "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). No personal jurisdiction exists over a defendant unless, while doing the acts as alleged in the complaint, the defendant purposefully availed him or herself of the privilege of conducting activities within the forum state and thus invoked the benefits and protections of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The Supreme Court of the United States has held that personal jurisdiction can be proper over a defendant in certain circumstances when the "effects" of the defendant's conduct are felt in the forum state. *See Calder v. Jones*, 465 U.S. 783, 789 (1984). However, this "effects" test was later narrowed in *Walden v. Fiore*, 571 U.S. 277 (2014). In *Walden*, the Court clarified that "mere injury to a forum resident is not a sufficient connection to the forum," because "[r]egardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290.

III.  ARGUMENT

Ms. Mueller has not been a resident of Tennessee since March 2018 and only lived in Tennessee periodically prior to that time. (Exh. 1—Declaration.) Therefore, her contacts with

3

Case 3:20-cv-00975   Document 15   Filed 01/19/21   Page 3 of 13 PageID #: 44

the forum state are "substantial" and "continuous and systematic," such that the state may exercise personal jurisdiction even if the action does not relate to the defendant's contacts with the state. *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). Specific jurisdiction exists when the contacts giving rise to jurisdiction relate to the claim that is before the court. *Id.* These contacts must have been purposefully established by the defendant and the exercise of personal jurisdiction must not "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). No personal jurisdiction exists over a defendant unless, while doing the acts as alleged in the complaint, the defendant purposefully availed him or herself of the privilege of conducting activities within the forum state and thus invoked the benefits and protections of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The Supreme Court of the United States has held that personal jurisdiction can be proper over a defendant in certain circumstances when the "effects" of the defendant's conduct are felt in the forum state. *See Calder v. Jones*, 465 U.S. 783, 789 (1984). However, this "effects" test was later narrowed in *Walden v. Fiore*, 571 U.S. 277 (2014). In *Walden*, the Court clarified that "mere injury to a forum resident is not a sufficient connection to the forum," because "[r]egardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290.

III.  ARGUMENT

Ms. Mueller has not been a resident of Tennessee since March 2018 and only lived in Tennessee periodically prior to that time. (Exh. 1—Declaration.) Therefore, her contacts with

this state are not the type of "continuous and systematic" contacts that confer general jurisdiction. *See Youn*, 324 F.3d at 417. Accordingly, Plaintiff must prove that Ms. Muller purposefully established certain "minimum contacts" with Tennessee, that the causes of action asserted in the Verified Complaint arise out of that contact, and that the assertion of jurisdiction over Ms. Mueller in Tennessee would not "offend traditional notions of fair play and substantial justice." *International Shoe Co.*, 326 U.S. at 316. None of the conduct complained of in the Plaintiff's Verified Complaint occurred in Tennessee, and indeed some of it never occurred at all. (Exh. 1—Declaration.) Further, Ms. Mueller directed her concerns regarding the Plaintiff's online behavior to his "counterparties" located in the state of New York. (*Id.*) The fact that the Plaintiff's alleged injury may have been felt in the state of Tennessee because he lives here is insufficient, standing alone, to confer personal jurisdiction. None of Ms. Mueller's alleged conduct was directed toward the state of Tennessee nor did she take advantage of the benefits and protections of Tennessee while allegedly engaged in this conduct. Therefore, Ms. Mueller respectfully requests that the entire Verified Complaint be dismissed under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction over her.

## **MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) FOR FAILURE TO STATE A CLAIM**

In the alternative to her motion to dismiss for lack of personal jurisdiction, Ms. Mueller moves to dismiss Counts I, IV, VI for failure to state a claim under Federal Rule of Procedure 12(b)(6) and requests further relief under the Tennessee Public Participation Act.

### I. STATEMENT OF FACTS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests assumes that all facts alleged in the complaint are true. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th

4

Case 3:20-cv-00975   Document 15   Filed 01/19/21   Page 4 of 13 PageID #: 45

Cir. 1996). However, in deciding a motion to dismiss "the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005). "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See Young v. Mohr*, No. 2:12-CV-349, 2013 WL 693050, at *4 (S.D. Ohio Feb. 26, 2013) (citing Fed. R. Evid. 201).

This section of Ms. Mueller's memorandum will assume all facts as pleaded in the Complaint are true. In addition, Ms. Mueller asks the Court to consider the email attached as Exhibit 2[1] for purposes of her Rule 12(b)(6) motion because it is integral to the Plaintiff's Complaint. Plaintiff alleges that Ms. Mueller "interfere[d] with Plaintiff's contractual relationships by intentionally inducing some or all of the aforementioned counterparties to breach their contractual agreements with Plaintiff." (Vfd. Compl. ¶ 22.) The "interference" Plaintiff refers appears to be the communications with Blue Wolf Capital that began with the email attached as Exhibit 2. This email is integral to the Complaint because it forms the basis for multiple counts and is expressly referenced in the Verified Complaint. Therefore, Ms. Mueller requests that this Court consider both the factual allegations in the Verified Complaint as well as the attached email exhibit in ruling on her motions to dismiss for failure to state a claim.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "provide the 'grounds' of [a plaintiff's] 'entitle[ment] to relief,'" which "requires more than labels and

---

[1] Ms. Mueller also sent "screenshots" of some of Plaintiff's inflammatory posts as attachments to this email. Undersigned counsel has not included these attachments, subject to further determination of this Court regarding whether they are appropriate for entry into the record.

conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations contained in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* The allegations in the complaint must illustrate that it is plausible that the plaintiff may recover, not merely that it is possible. *Id.* at 562-563. A cause of action may also be dismissed when the complaint does not include essential elements of the cause of action nor sufficient facts to infer the essential elements. *See, e.g. Moore v. Univ. of Memphis*, No. 2:19-CV-2717-MSN-DKV, 2019 WL 8017122, at *3 (W.D. Tenn. Nov. 22, 2019), *report and recommendation adopted*, No. 219CV02717MSNDKV, 2019 WL 6717610 (W.D. Tenn. Dec. 10, 2019).

### III. ARGUMENT

Counts I, IV, and VI of Plaintiff's Complaint each fail to state a claim under Fed. R. Civ. P. 12(b)(6). This section will address each in turn.

#### a. Count I: Tortious Interference

Plaintiff's first cause of action is for tortious interference under Tennessee Code Annotated section 47-50-109. There are seven elements to this claim, both under Tennessee common law and the Tennessee Code:

> The plaintiff must prove that there was a legal contract, that the wrongdoer had sufficient knowledge of the contract, and she intended to induce its breach. Further, that the wrongdoer acted maliciously, and the contract was, in fact, breached, and the alleged act was the proximate cause of the breach, and damages resulted from that breach.

*Baker v. Hooper*, 50 S.W.3d 463, 468 (Tenn. Ct. App. 2001) (quoting *TSC Industries, Inc., v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987)). Plaintiff appears to attempt to satisfy the malice element by pleading that all Defendants (including Ms. Mueller) induced Plaintiff's counterparties to breach a contract with him "in a deliberate effort to harm him." (Vfd.

6

Compl. ¶ 34). However, "[m]alice in [the context of Tennessee Code Annotated section 47-50-109] does not require illwill or spite toward the injured party." *In re AM Int'l, Inc.*, 46 B.R. 566, 575 (Bankr. M.D. Tenn. 1985). "If the actor has no legally protected purpose behind his action, he will be considered legally malicious. However, some actions are justified or privileged. 'Procuring the breach of a contract in the exercise of an equal or superior right . . . is justification for what would otherwise be an actionable wrong.'" *Id.* at 575-76 (quoting *Fury Imports Inc. v. Shakespeare Co.*, 554 F.2d 1376, 1383 (5th Cir. 1977)). Even if a defendant has an erroneous belief that they are entitled to exercise an equal or superior right, there is no liability under Tennessee Code Annotated section 47-50-109 unless the defendant acted in bad faith and without belief in the merit of his or her claim. *See id.* at 577.

Here, Plaintiff failed to allege malice appropriately as an essential element of his tortious interference claim. Malice is not "a deliberate effort to harm" someone in this context, but rather an action taken in bad faith and for no legally protected purpose. As demonstrated by the email attached as Exhibit 2, Ms. Mueller did not contact Blue Wolf Capital to harm Mr. Santoni, but to bring attention to the violent nature of his posts, which she found concerning. Her email specifically states, "I would look past all of this, even the degrading comments towards me, if it were not for the violence." (Exh. 2—Email.) Moreover, the email exhibits Ms. Mueller's good faith belief in the validity of her claim and in her need to report Plaintiff's concerning online behavior. Therefore, Ms. Mueller requests that Count I be dismissed for failure to state a claim under Rule 12(b)(6).

  b. **Count IV: False Light**

Count IV of the Complaint alleges that Ms. Mueller and the three anonymous defendants placed Plaintiff in a false light before others. (Vfd. Compl. ¶ 52-57.) However, this count fails to

plead actual malice and is required to do so because Plaintiff is a public figure under Tennessee law and because Ms. Mueller's speech regarded matters of public concern.

In Tennessee, the actual malice standard applies to "false light claims when the plaintiff is a public official or public figure, or when the claim is asserted by a private individual about a matter of public concern." *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 647 (Tenn. 2001). There are four types of public figures:

> [T]hose who have thrust themselves into the vortex of important public controversies; those who achieve such pervasive fame or notoriety that they become public figures for all purposes, and in all contexts; those who voluntarily inject themselves, or are drawn into public controversies, and become public figures for a limited range of issues; and those who assume special prominence in the resolution of public questions.

*Hibdon v. Grabowski*, 195 S.W.3d 48, 58 (Tenn. Ct. App. 2005) (quoting *Press, Inc. v. Verran*, 569 S.W.2d 435, 441 (Tenn. 1978)). Further, matters of public concern are those "of political, social, or other concern to the community," *Connick v. Myers*, 461 U.S. 138, 146 (1983). "Actual malice" is defined as "knowledge that [the defendant's statement was false or with reckless disregard of whether it was false or not]." *Hibdon,* 195 S.W.3d at 58 (Tenn. Ct. App. 2005).

Here, Plaintiff's Complaint, while initially referring to him as "a private citizen," essentially admits that he is a public figure in the next paragraph. (Vfd Compl. ¶ 9-10.) Plaintiff states in his Verified Complaint that his Twitter accounts "developed a following over time. [Plaintiff] was often engaged in debate, repartee and banter with professional journalists, political pundits, celebrities, and other full-time intellectuals and creatives such as comedians and media writers, who operated under verified Twitter accounts signified by a blue check mark next to their username." (Vfd Compl. ¶ 10.) Plaintiff, while perhaps not a public figure that has achieved pervasive fame and notoriety for all purposes, nonetheless made himself a public figure

in context of speech-based torts by "thrust[ing] [himself] into the vortex of important public controversies" and "voluntarily inject[ing] [himself], or [being] drawn into public controversies." *Hibdon,* 195 S.W.3d at 58 (Tenn. Ct. App. 2005). Further, as discussed above, Ms. Mueller's statements to employees of Blue Wolf Capital Group related to a matter of public concern—public safety. Ms. Mueller contacted Blue Wolf Capital Group regarding Plaintiff's social media accounts that had been "'suspended' for violent rhetoric and abusive behavior" and expressed her belief that "[a] CEO allegedly advocating political violence if people do not vote for his 'world view' is concerning." (Exhibit 2—Email.)

Moreover, even if this Court were to determine that Plaintiff is not a public figure of any kind and that the statements at issue related only to matters of private concern, Plaintiff would still be required to plead negligence on the part of Ms. Mueller as to the falsity of the light in which Plaintiff was allegedly placed. *See West*, 53 S.W.3d at 648; *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974). The Verified Complaint lacks allegations of either actual malice or negligence in Count IV as well as any facts in the Complaint that would support either standard of fault. Therefore, Ms. Mueller respectfully submits that Count IV should be dismissed for failure to state a claim.

### c. Intentional Infliction of Emotional Distress

Count VI of Plaintiff's Verified Complaint alleges that Ms. Mueller and the other unknown defendants intentionally inflicted emotional distress on Plaintiff. (Vfd. Compl. ¶ 65-68.) However, it is well-settled that "public figures and public officials may not recover for the tort of intentional infliction of emotional distress [by reason of a publication] without showing in addition that the publication contains a false statement of fact which was made with 'actual malice.'" *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988). This requirement is

9

Case 3:20-cv-00975   Document 15   Filed 01/19/21   Page 9 of 13 PageID #: 50

necessary to "give adequate 'breathing space' to the freedoms protected by the First Amendment." *Id.* As discussed above, Plaintiff is a public figure by virtue of his repeated and high-profile participation in public controversies on the Internet, and Plaintiff admits to this in the Verified Complaint. Therefore, since the Verified Complaint does not allege actual malice and includes no facts that would support an allegation of actual malice on the part of Ms. Mueller, Count VI should be dismissed for failure to state a claim.

## PETITION UNDER THE TENNESSEE PUBLIC PARTICIPATION ACT

In the alternative to her motion to dismiss for lack of personal jurisdiction and in addition to her Rule 12(b)(6) motions, Ms. Mueller further requests relief under the Tennessee Public Participation Act because this action was filed against her in response to the exercise of her First Amendment Rights.

The Tennessee Public Participation Act (TPPA), Tenn. Code Ann. § 20-17-101—109, "encourage[s] and safeguard[s] the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law and, at the same time, protect the rights of persons to file meritorious lawsuits for demonstrable injury." § 20-17-102. The TPPA provides that a party may petition for relief when "a legal action is filed in response to a party's exercise of their right of free speech, right to petition, or right of association." Tenn. Code Ann. § 20-17-104(a). The TPPA defines "exercise of right of free speech" as "a communication made in connection with a matter of public concern or religious expression that falls within the protection of the United States Constitution or the Tennessee Constitution." Tenn. Code Ann. § 20-17-103(3). Matters of public concern include, but are not limited to, issues related to health, safety, community well-being, government, public figures or officials, goods and services, and art. Tenn. Code Ann. § 20-17-103(6). Available relief under

10

Case 3:20-cv-00975   Document 15   Filed 01/19/21   Page 10 of 13 PageID #: 51

the TPPA includes the right to petition for the action to be dismissed immediately, a stay of discovery upon the filing of a petition, and an award of costs, attorney fees, and sanctions against a plaintiff. Tenn. Code Ann. § 20-17-104, 107. Moreover, the TPPA provides that it is an "additional substantive remedy" that protects "the constitutional rights of parties" and supplements any other remedies available under other sources of law. Tenn. Code Ann. § 20-17-109. It is a long-recognized principle that federal courts exercising diversity jurisdiction "apply state substantive law and federal procedural law." *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

As outlined above, this action was filed in response to Ms. Mueller's exercise of her right to free speech regarding a matter of public concern. Ms. Mueller communicated her honest belief to Plaintiff's "counterparties" that his online behavior was concerning and implicated public safety. (Exhibit 2—Email.) Further, Plaintiff has failed to establish a prima facie case for Counts I, IV, VI, which all relate to Ms. Mueller's exercise of free speech as defined by the TPPA. Therefore, Ms. Mueller respectfully requests that, if this Court chooses to exercise personal jurisdiction over her in this matter, discovery proceedings be stayed until a ruling can be made on her petition under the TPPA. Further, Ms. Mueller requests that Counts I, IV, and VI be dismissed under the TPPA and that attorney fees, costs, and sanctions to deter Plaintiff and others similarly situated from filing a similar lawsuit in the future be awarded under Tennessee Code Annotated § 20-17-107.

        **Respectfully submitted,**

        **FREEMAN & FUSON**

        **/s/ Mark T. Freeman**
        **Mark T. Freeman, Esq. (#16098)**
        Attorney for Sarah Mueller
        2126 21st Avenue South
        Nashville, Tennessee 37212
        Mark@Freemanfuson.com
        Phone: 615-298-7272
        Fax: 615-298-727

12

Case 3:20-cv-00975    Document 15    Filed 01/19/21    Page 12 of 13 PageID #: 53

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been forwarded via the District Court E-File system, to the following on January, 19, 2021:

Bruce S. Kramer
Apperson Crump PLC
6000 Poplar Avenue
Suite 150
Memphis, TN 38119
(901) 756-6300
Fax: (901) 757-1296
bkramer@appersoncrump.com

Jonathan M. Wolf
Jonathan M. Wolf, PLLC
111 17th Ave S
Suite #2410
Nashville, TN 37203
(901) 233-0505
jonathan@wolf.lawyer

                                        **/s/ Mark T. Freeman**
                                        Mark T. Freeman, Esq.