IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| THOMAS E. SANTONI | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:20-cv-00975 |
| | ) | |
| SARAH ELIZABETH MUELLER AND | ) | JURY TRIAL DEMANDED |
| DOES #1-3, INCLUSIVE | ) | |
| | ) | Judge Eli Richardson |
|     Defendants. | ) | Magistrate Jeffery S. Frensley |

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
SANCTIONS, DISCOVERY, AND OTHER RELIEF FOR SPOLIATION OF
EVIDENCE
*EVIDENTIARY HEARING AND EXPEDITED RELIEF REQUESTED*

COMES NOW the Plaintiff, Thomas E. Santoni ("Plaintiff" or "Santoni") by and through

his undersigned counsel and pursuant to Federal Rule of Civil Procedure 37(e) and this Court's

inherent authority to control the judicial process in litigation, respectfully submits the following

Memorandum of Law in support of his Motion for Sanctions, Discovery, and Other Relief for

Spoliation of Evidence.

I.    <u>INTRODUCTION AND BACKGROUND</u>

Plaintiff files the instant motion because Defendant Sarah Elizabeth Mueller has deleted

large quantities of highly relevant electronic evidence in the form of hundreds if not thousands of

social media communications during the instant litigation. The small amount of destroyed evidence

that Plaintiff has been able to recover is highly relevant both to Plaintiff's case in chief and the

claims Defendant Sarah Elizabeth Mueller (hereinafter, Defendant SE) makes in her Motion to

Dismiss to Stay Discovery and for Sanctions (hereinafter, the "Motion to Dismiss"), (ECF No. 14)

1

and the Declaration she filed in support of it. Defendant SE's actions as described below, are also devastating to her overall credibility in this litigation. Accordingly, Plaintitiff cannot adequately respond to Defendant SE's Motion to Dismiss without the discovery requested herein.

This case arises from a series of pseudonymous social media interactions between Plaintiff and Defendant SE, which began as early as 2016 and ended when Plaintiff cut off communication with Defendant for the final time in late spring 2019 due to her obsessive behavior. Their relationship existed and occurred exclusively through social media communication over the internet. Plaintiff was concerned that Defendant SE had developed a kind of a delusional infatuation with him, more like a limerence, despite the fact that they never met in person or even spoke on the phone and their conversations centered primarily about politics and current events.

Plaintiff and Defendant SE primarily communicated over Twitter. However, when Plaintiff found it necessary to block Defendant SE on Twitter due to her obsessive behavior, Defendant SE reached out to Plaintiff on other social media platforms to get his attention and plead to be unblocked so that she could communicate with Plaintiff again. This happened on at least two occasions prior to June 2019 when Plaintiff blocked Defendant SE on Twitter for the final time.

In response to being blocked on social media by Plaintiff, Defendant SE created other fictious and deceptive Twitter accounts in order to communicate with Plaintiff in circumvention of Plaintiff's Twitter block, to harass, surveil, and/or deceive Plaintiff.[1] Plaintiff later came to learn that as part of a long running scheme, Defendant SE breached his internet network accounts, discovered Plaintiff's true identity, as well as those of his family, friends, and employer. Defendant SE then concocted false allegations against Plaintiff and fabricated evidence putting Plaintiff in a

---

[1] Plaintiff has come to learn that Defendant SE owns and/or controls **at least 4** different twitter accounts: @sarahelizab370, @sarahextra3770, @lifeofsarah370 (formerly @lovelaughvote), and @miralaguna8.

false light, which she then gratuitously and systematically used to harass Plaintiff's employer, friends, and family members, forcing Plaintiff to bring the instant action.

Plaintiff has recently discovered that during the relevant time period and as part of her scheme to surveille, defame, harass and damage Plaintiff, Defendant SE created at least one other social media account under an assumed identity that she used to harass, deceive, and/or defraud Plaintiff, as more fully described below. Defendant SE then used fake individuals and false narratives to substantiate her false claims against the Plaintiff with her regard to his former employer. Then, and perhaps most alarmingly, after Plaintiff instigated this lawsuit, Defendant SE proffered this fake person as a witness in her initial disclosures. When it became apparent to Defendant SE that Plaintiff had uncovered her fraudulent scheme, she set about destroying electronic evidence in a brazen but elementary attempt to cover it up.

Due to Defendant SE's egregious conduct, it is imperative that Plaintiff be allowed to preserve the remaining evidence in this matter and ascertain the full extent of the spoliation. There are hundreds if not thousands of deleted Twitter communications that Plaintiff has not been able to analyze due solely to Defendant SE's conduct. Yet, as discussed in greater detail below, the relatively miniscule amount of deleted evidence that Plaintiff has been able to recover is highly damning. Accordingly, Plaintiff respectfully requests that this Honorable Court grant Plaintiff leave to conduct discovery on the spoliation as well as impose sanctions on Defendant SE, as outlined in his Motion filed contemporaneously herewith.

## II.    FACTS GIVING RISE TO THE INSTANT MOTION

The evidence in this case spans at least four years and is comprised of thousands of Twitter communications between the parties amongst themselves as well as third parties. The social media communications and/or records of communications are of paramount importance in this lawsuit

because the parties' relationship took place exclusively through their interactions over social media. They never met in person or spoke on the phone. After initiating this litigation, Plaintiff began to notice that certain Tweets that he noted to be of significant importance to this litigation began to disappear from Defendant SE's main Twitter account, @sarahelizab370. Exhibit L, *Santoni Decl.* ¶ *10.* Subsequently, another Twitter account, @sarahextra3770, that Defendant SE had used to harass Plaintiff after he blocked her main account, suddenly appeared to have been deleted. Counsel for Plaintiff raised the issue and conferred with defense counsel, and no resolution was reached. Exhibit M. However, the problem appears to have grown substantially in scope.

Thereafter, Plaintiff came to learn that Defendant SE had for months been luring him into a relationship with a fictional online persona, under the assumed identity, @miralaguna8, (a process known in internet parlance as "catfishing"). Exhibit L, *Santoni Decl.* ¶ *6-9.* Suddenly, after this litigation commenced, that Twitter account was also deleted. Exhibit F, *Aranega Decl.* ¶*11.* That deleted account alone represents hundreds if not thousands of missing Twitter communications, though it is impossible to ascertain the full extent of the spoliation without the limited discovery requested in Plaintiff's Motion herein.

It is important to note that though Defendant SE's Tweets have been deleted and are no longer publicly accessible, the statements of the other Twitter users in those conversations are still visible in hundreds if not thousands of cases. The Twitter system often signifies a deleted Tweet at issue by a grey box that says, "This Tweet was deleted by the Tweet author". However, the topics of conversation as well as the relevancy of the deleted Tweets can easily be established based solely on the statements of the other parties to that conversation.

The spoliated Twitter communications fall into four main categories: (1) communications that Defendant SE made to Plaintiff (under an assumed identity); (2) communications Defendant

SE made to third parties (under an assumed identity) that are relevant to this lawsuit because they are either about Plaintiff and/or topics related to the instant litigation; (3) communications from Defendant SE (under her known identity) to Plaintiff; and (4) communications Defendant SE made to third parties (under her known identity) that are relevant to this lawsuit because they are either about Plaintiff and/or topics related to the instant litigation.

1. <u>Spoliated Twitter Communications between Defendant SE (under an assumed identity) and Plaintiff.</u>

Plaintiff has recently come to learn that Defendant SE impersonated other people as part of a long running scheme to surveille harass, deceive, and/or defraud Plaintiff. One of the people that Defendant SE appears to have completely invented to accomplish this was her "friend" Mira, @Miralaguna8 (hereinafter "Mira"). Notably, Defendant SE also used Mira to concoct false allegations against Plaintiff, and manufacture evidence to substantiate those same false allegations, including in this litigation. Mira and her similarly fictitious significant other, Ken, had a very elaborate backstory. This is important because elements of Mira's fictitious biographical information are highly interwoven into this dispute. Without the discovery Plaintiff requests in this Motion, it is impossible to tell where Mira's life story ends and Defendant SE's begins.

Mira communicated with Plaintiff for months. However, Mira became most active during the period of time that Plaintiff had blocked Defendant SE's main accounts. In a series of tweets spanning six days (April 23, 2019 to April 29, 2019), Mira begged and pleaded with Plaintiff trying to convince Plaintiff to unblock Defendant SE on Twitter. However, unbeknownst to Plaintiff at the time, the begging and pleading was not from a real person, Mira, but was actually Defendant SE, masquerading as the fictitious Mira. See the excerpted examples below and attached hereto as <u>Collective Exhibit A</u> (@NateGreen18, was a pseudonym used by Plaintiff).



Collective Exhibit A.

On April 29, 2019, presumably frustrated that Plaintiff didn't take Mira's advice to unblock her to permit her to communicate with him on Twitter, Defendant SE messaged Plaintiff from a new Twitter account under her own persona, @SarahExtra3770, complaining that her friends Ken and Mira had to check on her because of Plaintiff's actions. Attached to that message were pictures of Plaintiff's wife and house, the obvious purpose of which was to harass and/or intimidate Plaintiff:

> "Don't play games with me anymore like this. I'm done with Twitter. I was smart enough to save everything when you would not tell me your name to protect myself. I have had 2 friends; **Ken & Myra** check on me in the past because of how you act and witnessed it. Do not lie about me." (emphasis added.)

<u>Collective Exhibit B</u>.



*Id.*

Defendant SE then references the fictitious Mira in her May 19, 2019 email to Plaintiff in which she states, "You lied about me to a friend who I worked with, mentored, and whose SO donates tens of thousands of dollars to a non-profit I love. How long are you going to humiliate me? Why on earth would you do this?" <u>Exhibit C</u>.

Defendant SE then sent this false and wholly manufactured narrative to Plaintiff's employer. Defendant SE specifically references this in her January 20, 2020 email to an attorney for Plaintiff's employer, where she states: "I have friends who saw him doing this to the point where I was asked about it offline." In the same email Defendant SE goes on to state, "I was honest and upfront with him. I only agreed to speak with one of the top lawyers in the United States representing an investment company and Tom Santoni's company because I am being honest." *See* <u>Exhibit D</u>.

Most importantly, in her Rule 26 Initial Disclosures[2], Defendant SE was so committed to this scam that on February 23, 2021 Defendant SE identified @Miralaguna8 as an individual with

---

[2] Significantly, despite the requirements of Rule 26(a)(1), Defendant did not identify any contact information for this witness.

"information related to the nature of Plaintiff's online conduct and his behavior toward Ms. Mueller and others." *See* Exhibit E, *Defendant's Rule 26 Initial Disclosures*.

Mira's Twitter account was active at the outset of this litigation, and it has since been deleted. This can easily be established because publicly available records show another Twitter user known as @brocanteuse interacting with the @miralaguna8 account as late as November 19, 2020. *See also* Exhibit F, *Aranega Decl. ¶ 11*. The account would have had to have been active as of that date for this to be possible. This action was filed on November 11, 2020 and Defendant SE was served with process on November 19, 2020, the same day. See Exhibit N, *Affidavit of Efrain Sotelo*. It also now appears that both the @miralaguna8 and @sarahextra3770 accounts have both been recently deleted in their entirety.

     2.     <u>Spoliated communications Defendant SE made to third parties (under an assumed identity) that are relevant to this lawsuit because they are either about Plaintiff and/or topics related to the instant litigation</u>

Mira's now deleted, communications with other people are just as bizarre and troubling, if not more so. It is critical to note that Plaintiff was only able to find these communications because other Twitter users posted screenshots of them, presumably for their own reasons. As mentioned above, Defendant SE appears to have deleted the entire @miralaguna8 account, as well as the posts from @sarahelizab370 referenced below.

In one example, another Twitter user who claims to be an attorney, @deed_doer, and while engaged in what appears to be her own disagreement with Defendant SE, appears to have posted her own screenshots of some of Mira's missing tweets. In that example, Mira appears to break character and ostensibly brag about getting Plaintiff fired in a veiled threat to that attorney, when she says: *"Dear, I just spent months talking to top lawyers in NYC and a CEO was fired because*

*of it. Let me know when you have the balls to use your real name."* This is an obvious reference to her conduct toward Plaintiff as complained of in this litigation. See excerpted examples below:



Collective Exhibit G; *See also* Exhibit F, *Aranega Decl. ¶ 9-11.*

In response, other Twitter users appear to post screenshots of suspicious posts from the @miralaguna8 account. Then, those users appear to decipher that @miralaguna8 is indeed also Defendant, Sarah Elisabeth Muller. As part of this exchange, another Twitter user, @cbouzy, posted his own screenshot of a Tweet where Mira claims to live in a Laguna beach mansion and "laugh at wanna be men." The significance of the @miralaguna8 account to this litigation cannot be overstated. Defendant SE's statement that she lives in Laguna Beach (now deleted) also clearly contradicts the statements she makes in her Motion to Dismiss. See excerpted examples below:







Collective Exhibit G.

3.    <u>Spoliated Twitter Communications from Defendant SE (under her known identity)</u>
<u>to Plaintiff</u>.

Defendant SE deleted specific Tweets from her @sarahelizab370 account that would demonstrate the obsequious nature of her communications to him, and that she was really the one harassing him. She appears to have specifically deleted her Tweets to Plaintiff that would have provided the context to their conversations. Plaintiff has noticed that there appears to be missing Tweets from key periods of time such as Nov 1, 2018 to Nov 27, 2018. This is particularly noteworthy because Plaintiff is under the impression these time periods correspond to the false allegations Defendant SE made to Plaintiff's employer. Moreover, Defendant SE also appears to have deleted most of her Tweets to Plaintiff from that account from April to June 2019. This is crucial because this was when Plaintiff blocked Defendant SE for the final time, and it was also when she was "catfishing" him. See excerpted examples below:



<u>Collective Exhibit H</u>.

Plaintiff also believes that Defendant SE specifically deleted Tweets from and around December 17, 2018. This period time is critical because Defendant SE sent Plaintiff a private message on November 30, 2018, where she threatened to impersonate him on the internet, even detailing how she would bypass the security verification procedure, stating:

> I knew that was you! I don't want you to leave Twitter…even if you are too busy to post every day. **I'm just going to make you 5 accounts from Arizona so Twitter thinks you live out West and you'll be around to give me a hard time. I'm joking but I would so you can Tweet freely. I read people are using Google numbers to get past the number verification with cell phones.** (emphasis added)

## Sarah Elizabeth sent you a Direct Message.

> I knew that was you! I don't want you to leave Twitter…even if you are too busy to post every day. I'm just going to make you 5 accounts from Arizona so Twitter thinks you live out West and you'll be around to give me a hard time. I'm joking but I would so you can Tweet freely. I read people are using Google numbers to get past the number verification with cell phones. My friend is back…that evil woman is gone…and I smiled tonight. That's all that matters to me

<u>Exhibit I</u>, *Plaintiff's Initial Document Production* 000001-000002.

Defendant SE clearly wasn't really joking as she states because she was really catfishing Plaintiff pretending to be Mira. <u>Exhibit L</u>, *Santoni Decl.* ¶ 6.

4.     <u>Spoliated Twitter Communications between Defendant SE and Third Parties that are Relevant to the Instant Litigation</u>.

As stated above, it's impossible to know how many Twitter communications were deleted without the discovery requested herein. However, Plaintiff has noted specific examples of Tweets that Defendant SE made directly relevant to this dispute that have recently been deleted. On May 31, 2020, Defendant SE Tweeted to a user known as @dhosterman from her @sarahelizab370 Twitter account: *"Oh look. **Tom Santoni's** favorite people. Every asshat group in America is taking advantage of the real issue."* (emphasis added) See excerpted example below:



Sarah Elizabeth @saraheliz... · 5/31/20 ∨
Replying to @dhosterman
Oh look. **Tom Santoni**'s favorite people.
Every asshat group in America is taking
advantage of the real issue.

<u>Collective Exhibit J</u>.

This Tweet was still live as of November 19, 2020, when Plaintiff's counsel took a screenshot of it. This was also same day Defendant SE was served with process in this matter. (<u>Exhibit N</u>, *Affidavit of Efrain Sotelo*). That Tweet has since been deleted. This Tweet was relevant to show the nature of Defendant SE's communications with Plaintiff, i.e., that Defendant SE was really the one harassing Plaintiff and that Plaintiff wanted nothing to do with her.

In another instance, on November 2, 2020, nine days before Plaintiff's complaint was filed, Defendant SE Tweeted in response to a post from then President of the United States @realDonaldTrump, from her @sarahelizab370 Twitter account: *"Texan here. **Trump is as pathetic as Tom Santoni**. Texas was a classier place when it raised me. Stop doing asshat things in the name of #Texas. Don't let this abusive behavior distract you. #vote #joebiden…"* See excerpted example below:



Collective Exhibit J.

That Tweet has since been deleted. This Tweet was relevant to show the nature of Defendant SE's communications with Plaintiff, i.e., that Defendant SE was really the one harassing Plaintiff and that Plaintiff wanted nothing to do with her. Additionally, Defendant SE's statement "Texan here," certainly contradicts the statements regarding her residency as made in her Motion to Dismiss. Exhibit K, *Mueller Decl. ¶1-4.* Given the foregoing, it's highly unlikely there is an innocent explanation for its disappearance. Accordingly, Plaintiff can only ascertain the extent of this spoliation with the discovery requested herein. Further, given the central nature of the deleted Twitter communications to the claims in Defendant's Motion to Dismiss, Plaintiff cannot adequately answer the same without getting to the bottom of the missing evidence. Additionally, Defendant SE's conduct was particularly egregious and sanctions are warranted.

III. **LAW AND ARGUMENT**

    A. **Defendant SE Has Engaged in the Egregious Spoliation of Evidence and Should Be Sanctioned.**

Defendant SE deleted hundreds, if not thousands, of electronic communications that go to the heart of this litigation. In doing so, she severely prejudiced Plaintiff by eliminating evidence

that would support Plaintiff's claims that Defendant SE tortiously interfered with his contractual relationships, hacked into Plaintiff's internet accounts, put Plaintiff in a false light, and intentionally inflicted emotional distress upon him. Additionally, the spoliated evidence that Plaintiff has managed to recover clearly contradicts the arguments and statements made in Defendant's Motion to Dismiss.

Spoliation of evidence is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Clark Const. Group, Inc. v. City of Memphis*, 229 F.R.D. 131, 136 (W.D. Tenn. 2005). The United States Supreme Court has observed, "Aside perhaps from perjury, no act serves to threaten the integrity of the judicial process more than the spoliation of evidence. Our adversarial process is designed to tolerate human failings-erring judges can be reversed, uncooperative counsel can be shepherded, and recalcitrant witnesses compelled to testify. But, when critical documents go missing, judges and litigants alike descend into a world of ad hocery and half measures-and our civil justice system suffers." *United Med. Supply Co. v. United States*, 77 Fed. Cl. 257, 258 (2007) (ordering sanctions for spoliation of evidence against the U.S. government for repeatedly violating its obligation to preserve documents over a 5-year period). The Sixth Circuit holds that federal law governs the rules and sanctions which federal courts should apply where spoliation of evidence has occurred. *See Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (en banc) (overruling prior Sixth Circuit cases holding that state law governs spoliation sanctions in federal courts).

It is well-settled that parties to litigation must take affirmative steps to preserve critical evidence and cannot take steps that they know will result in the evidence being destroyed. If a party fails to preserve critical evidence once litigation is reasonably anticipated or has commenced, a court may impose sanctions, including the imposition of corrective adverse inferences. *See*

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of America Sec., LLC*, 685 F. Supp. 2d 456, 462 (S.D.N.Y., 2010) ("By now, it should be abundantly clear that the duty to preserve means what it says and that failure to preserve records—paper or electronic—and to search in the right places for those records, will inevitably result in the spoliation of evidence."). An adverse inference for spoliation of evidence is appropriate if the spoliating party "knew the evidence was relevant to some issue at trial and their culpable conduct resulted in its loss or destruction." *Id*. To warrant the imposition of sanctions, a party must show that the spoliating party (1) had control over the evidence and an obligation to preserve it at the time of destruction or loss; (2) acted with a culpable state of mind in destroying or losing the evidence; and that (3) the missing evidence is relevant to the innocent party's claim or defense. *In re: Global Technovations, Inc.*, 431 B.R. 739, 778 (E. D. Mich.2010) (citing *Pension Comm.*, 685 F. Supp.2d at 467); *see also Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004).

The power to impose sanctions for spoliation of evidence arises from a court's inherent power to control the judicial process and litigation. "A court's inherent power is governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. This inherent power includes the Court's power to control and supervise its own proceedings." *Clark Const. Group, Inc.*, 229 F.R.D. at 136. Sanctions are "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. The applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Id*. (internal citations omitted). Where sanctions apply, "a proper spoliation sanction should serve both fairness and punitive functions, but its severity should correspond to the district court's finding after a fact-intensive inquiry into

a party's degree of fault under the circumstances, including the recognition that a party's degree of fault may range from innocence through the degrees of negligence to intentionality." *Beaven v. United States Dept. of Justice*, 622 F.3d 540, 554 (6th Cir. 2010). Thus, a district court could impose one of several different sanctions for spoliation evidence, including dismissing a case, granting summary judgment, or instructing the jury that it may infer a fact based on lost or destroyed evidence. *See id.*; *see also In re Global Technovations, Inc.*, 431 B.R. 739 (E. D. Mich. 2010) ("Other possible sanctions include monetary sanctions and precluding the spoliating party from introducing evidence on the subject matter of the spoliated evidence.").

### 1. Defendant SE Had Control Over the Evidence at Issue and the Obligation to Preserve it at the Time it was Destroyed.

A party's obligation to preserve potentially relevant evidence arises as soon as the party "has notice that the evidence is relevant to litigation or…should have known that the evidence may be relevant to future litigation." *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). Disputes concerning spoliation most often arise in the context of lost or destroyed documents or electronic data. In such circumstances, a party "must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents." *Zubulake v. UBS Warburg*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003); *see also Phillips v. Netblue, Inc.,* 2007 WL 174459, at *2 (N.D. Cal. Jan. 22, 2007) ("to preserve means 'to keep safe from injury, harm, or destruction.' Webster's Third New International Dictionary (Unabridged), at 1794 (1976)"); *Miller v. Holzmann*, 2007 WL 172327, at *5 (D. DC. Jan. 17, 2007)1; *Mosaid Tech. Inc. v. Samsung Elec. Co.*, 348 F. Supp. 2d 332, 339 (D. NJ. 2004) ("When the duty to preserve is triggered, it cannot be a defense to a spoliation claim that the party inadvertently failed to place a 'litigation hold' or 'off switch' on its document retention policy to stop the destruction of that evidence."). Thereafter, it is the responsibility of the parties to ensure that relevant evidence is

preserved, and when that duty is breached, a district court may exercise its authority to impose appropriate discovery sanctions. *Goetz*, 531 F.3d at 459.

In the present matter, Defendant SE clearly had control over the communications at issue at the time they were deleted because the Twitter accounts were hers. As the owner of the Twitter accounts, she had the ability to delete invidual Tweets that she posted. She also had the ability to delete the accounts in their entirety, though she had a duty not to.

Defendant SE's duty to preserve evidence arose immediately upon learning of the filing of Plaintiff's Complaint on November 19, 2020, at the absolute latest. However, here its highly likely her duty to preserve was triggered long before that. Given her prior statements and internet postings, it is well established that Defendant SE's duty to preserve the evidence at issue was triggered long before she was served with process in this case. For example, Defendant SE wrote to counsel for Plaintiff's former employer on January 20, 2020, "[he] knows its me behind the complaint because regardless of how he treated me, I was honest and upfront with him. I only agreed to speak with one of the top lawyers in the United States representing an investment company and Tom Santoni's company because I am being honest." Exhibit D. At the very least, Defendant SE knew she was not in fact being honest and upfront with Plaintiff or counsel for Plaintiff's employer because she was pretending to be Mira.

Though there are many deleted communications for which Plaintiff has not yet ascertained the date of deletion, it is well established that hundreds, if not thousands, of Twitter communications were deleted after Defendant SE was served with process in this matter, i.e., the last possible date that she could have conceivably innocently done it. *See* Exhibit F, *Aranega Decl.* ¶ *11*.

### 2. Defendant SE Acted with a Culpable State of Mind When Deleting the Evidence

Defendant SE's actions easily satisfy the culpable state of mind for a finding of intentionality. A culpable state of mind can be established by showing that "evidence was destroyed knowingly, even if without intent to [breach a duty to preserve it], or negligently." *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553–54 (6th Cir. 2010) (internal citation omitted). *See id.* at 555 ("[The] sanction [of an adverse inference] should be available even for the negligent destruction of documents if that is necessary to further the remedial purpose of the inference.") (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002)); *see also id.* (When . . . a plaintiff is unable to prove an essential element of her case due to the negligent loss or destruction of evidence by an opposing party, . . . it is proper for the trial court to create a rebuttable presumption that establishes the missing elements of the plaintiff's case that could only have been proved by the availability of the missing evidence.") (quoting *Rogers v. T.J. Samson Cmty. Hosp.*, 276 F.3d 228, 232 (6th Cir. 2002)); *Billiter v. SP Plus Corp.*, 329 F. Supp. 3d 459, 468 (M.D. Tenn. 2018) ("If Defendants knew this evidence was relevant to potential litigation and destroyed the evidence anyway, then a jury could find that such destruction was deliberate."); *Provience v. City of Detroit*, 2011 WL 7445088, at *9 (E.D. Mich. Nov. 28, 2011), report and recommendation adopted, 2012 WL 683378 (E.D. Mich. Mar. 2, 2012) ("Defendants either had the document and then willfully destroyed it, or had the document and lost it, which would constitute bad faith or negligence, respectively.").

The minimum culpability requirement is established by showing that the evidence was in existence on the trigger date, and that it was subsequently lost or destroyed. *See Providence v. City of Detroit*, 2011 WL 7445088, at *9 (E.D. Mich. Nov. 28, 2011), report and recommendation adopted, 2012 WL 683378 (E.D. Mich. Mar. 2, 2012) ("[O]nce the duty to preserve attaches, any

19

destruction of evidence is, at a minimum, negligent.") (internal citation omitted). In *In re Black Diamond Min. Co., LLC*, the defendant admitted to deleting a document from his computer and asked that certain documents on his desk be shredded. 514 B.R. 230, 239 (E.D. Ky. 2014). This occurred before a litigation hold was put in place, but after the trigger date. Id. The court held that "there [was] sufficient evidence to indicate he intentionally destroyed evidence he was under a duty to preserve." *Id*.

In this case, Defendant SE destroyed evidence with a culpable state of mind, because she deleted individual tweets and entire Twitter accounts with the knowledge they contained or were likely to contain information relevant to this litigation. Specifically, and without limitation, Defendant SE was aware that the communications she deleted were evidence of her long running scheme to defraud and/or deceive Plaintiff by impersonating a third person. The mere fact that the evidence was destroyed after the trigger date establishes the minimum requirement for negligence. *See Providence*, 2011 WL 7445088, at *9. In this instance, however, Defendant had actual knowledge that the evidence being destroyed was relevant to this litigation. Because Defendant SE deleted the evidence after the trigger date, she acted with a culpable state of mind.

### 3. The Evidence Destroyed by Defendant SE was Relevant.

It is beyond question that the information contained in the deleted communications was relevant information to support Plaintiff's claims and/or to disprove Defendant SE's defenses. This prong of the spoliation analysis focuses on whether or not the trier of fact could find that the evidence was relevant and would support the party's claim or defense. *Billiter*, 329 F.Supp.3d at 466 (M.D. Tenn. 2018). The relevance required in a spoliation analysis is "more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence [r]ather, the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer

that the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction." *Yoder & Frey Auctioneers, Inc. v. Equipment Facts*, LLC, 774 F.3d 1065, 1070–71 (6th Cir. 2014) (quoting *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 514 (6th Cir. 2014)); see also *id*. ("the moving party must make 'some showing indicating that the destroyed evidence would have been relevant to the contested issue.'"). Circumstantial evidence may be relied upon to "suggest the contents of destroyed evidence." *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 555 (6th Cir. 2010). Moreover, if evidence is destroyed "in bad faith (i.e., intentionally or willfully), that fact alone is sufficient to demonstrate relevance." *Provience v. City of Detroit*, 2011 WL 7445088, at *10 (E.D. Mich. Nov. 28, 2011), report and recommendation adopted, 2012 WL 683378 (E.D. Mich. Mar. 2, 2012). If the destruction was negligent, however, "relevance must be proven by the party seeking the sanctions." *Id*.

Here, the Tweets and Twitter Accounts were deleted intentionally by Defendant SE, most if not all of it, during the instant litigation. The evidence that was contained in the communications at issue is highly relevant to this litigation for a myriad of reasons. First, in her Rule 26 Initial disclosures, Defendant SE admits that the @MiraLaguna8 Twitter account has "information related to the nature of Plaintiff's online conduct and his behavior toward Ms. Mueller and others." Exhibit E, *Defendant's Initial Disclosures at p.4*.

Simply put, Defendant SE communicated with Plaintiff while impersonating an individual that did not exist, that she completely invented. She then used the fake person to concoct false allegations against Plaintiff, causing millions of dollars in damages to Plaintiff and occasioning his initiation of the instant litigation. While in this litigation, Defendant SE first proffered that the non-existent person was in possessed evidence of Plaintiff's alleged treatment of her, and then

when she got caught, she deleted the whole Twitter Account. The @MiraLaguna8 Tweets demonstrate Defendant's long running scheme to defraud Plaintiff and harm him. For example, she was communicating with Plaintiff under an assumed identity in a clear attempt to deceive and/or defraud him. Then she admitted (or bragged) that Plaintiff was fired as a direct result of her actions, in a blatant attempt to intimidate other Twitter users, at least one of which appears to be a licensed attorney. Additionally, the deleted Tweets of which Plaintiff is aware, appear to contradict statements made in Defendant's Motion to Dismiss. Defendant selectively deleted Tweets where she claimed to live in both Laguna Beach and Texas during the relevant time period. Neither of those places are mentioned in her sworn declaration where she names all the places she's lived since 2013. *See* Exhibit K, *Mueller Decl. ¶1-4*. In sum, it's hard to imagine evidence that could possibly be more relevant than what Defendant SE spoliated. That being said, Defendant SE selectively deleted hundreds, if not thousands, of Twitter communications, and Plaintiff cannot know the true extent of this destruction without the discovery Plaintiff seeks herein.

Even if the Court finds that Defendant SE did not act intentionally, then the deleted Twitter communications still represent relevant evidence of the highest order. The case of *Nacco Materials Handling Group, Inc. v. Lilly Co* is indicative of how similar spoliation has been handled. *Nacco Materials Handling Grp., Inc. v. Lilly Co.*, 278 F.R.D. 395, 405 (W.D. Tenn. 2011). In *Nacco*, the defendant company admitted that its employees accessed the plaintiff's secure website. The defendant subsequently "lost" the server logs and back-up tapes that would have evidenced the nature and extent of that access. *Id*. The Court noted that, because it was admitted that defendant's employees had accessed the plaintiff's site, it was "probable—even very likely—that some relevant ESI, such as internet history or server logs" existed on the missing evidence. *Id*. This evidence was likely the only way that the plaintiff could prove elements of its case. *Id*. In *Nacco*,

the plaintiff could not prove that relevant evidence was actually destroyed. *Id*. However, the defendant's access to the plaintiff's site, combined with the destruction of the server logs, was sufficient for the court to impose sanctions requiring the defendant to pay for forensic analysis of the hard drives of employees who had accessed the plaintiff's site. *Id*. at 406.

While *Nacco* is instructive in that the Court imposed sanctions on the party responsible for destroying evidence, the destruction in that instance could be remedied (perhaps only in part) through a forensic examination of the hard drives in question. Plaintiff is requesting this kind of forensic analysis of the devices Defendant SE used during the relevant time period. Plaintiff is also requesting leave of Court to issue third party subpoenas in part to ascertain if some of the information might still be accessible somewhere in the internet cloud. There is however no question that the spoliated Twitter communications represent highly relevant evidence in this case.

### 4. Defendant SE's Conduct was Particularly Egregious and Warrants Severe Sanctions and Discovery

Defendant SE's intentional deletion of the Twitter communications at issue, arguably, the most important source of evidence in this case, deserves the severest of sanctions. The level of sanctions applied should correspond with the level of culpability of the spoliating party. In cases of mere negligence, where "information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonablesteps to preserve it," the imposed sanction should be "no greater than necessary to cure the prejudice." *Billiter v. SP Plus Corp.*, 329 F. Supp. 3d 459, 465 (M.D. Tenn. 2018).

However, when the court finds "intent to deprive another party of the information's use in the litigation, it may (1) presume that the lost information was unfavorable to the party; (2) instruct the jury that it may or must presume the information was unfavorable to the party; or (3) dismiss the action or enter a default judgment." *Id.* A party's duty to preserve electronically stored

information must be taken seriously. See *Nacco Materials Handling Grp., Inc. v. Lilly Co.*, 278 F.R.D. 395, 407(W.D. Tenn. 2011). To avoid sanctions, a party must "cooperate and voluntarily preserve, search for, and collect ESI." *Id.*

To that end, the case of *Clark Construction Group, Inc. v. City of Memphis* is instructive, *Clark Const. Grp., Inc. v. City of Memphis*, 229 F.R.D. 131, 137 (W.D. Tenn. 2005). In *Clark*, the defendant city failed to enact measures to avoid the destruction of relevant evidence. Following the destruction of evidence by a city employee, the court found that it was "incumbent on the City and those representing the City in this action to preserve all documentation which was relevant or which might leadto the discovery of admissible evidence." *Id.* at 141. Because the city failed to preserve these documents, the court granted sanctions. *Id.* at 142 ("At trial, [plaintiff] should be entitled to a rebuttable adverse inference establishing that the [defendant] had documentswithin its possession which most likely would have been relevant to this case . . . [and reimbursement] for any fees and expenses incurred as a result of this discovery dispute."

Notably, the court in *Clark* stated that, though the city's actions were not committed willfully to hide evidence or out of fear that evidence would support the plaintiff, the actions were purposeful and grossly negligent. *Id.* at 141. *See also*, *Provience v. City of Detroit*, 2011 WL 7445088, at *11 (E.D. Mich. Nov. 28, 2011), *report and recommendation adopted*, 2012 WL 683378 (E.D. Mich. Mar. 2, 2012) (where the court imposed the "middle ground sanction of an adverse inference" so as not to "condone the negligent spoliation of evidence," but also not "impose unduly harsh penalty on a merely negligent party.").

Here, Defendant SE's actions are far worse than those of the defendant city in *Clark*. Whereas in *Clark*, the city merely failed to take affirmative steps to preserve evidence, Defendant SE took affirmative steps to destroy evidence – arguably the most important evidence in this case.

24

Where the actions of the defendant city in *Clark* were determined to be purposeful and grossly negligent, the actions of Defendant SE in this case were intentional. Where the defendant city in *Clark* was sanctioned with a rebuttable adverse inference, Defendant SE's intentional actions here warrant a greater sanction—that of a default judgment or striking of your claims and defenses

Should this Court decide not to grant Plaintiff's request for a default judgment or to strike her defenses and claims, after an evidentiary hearing, an adverse jury instruction regarding the destroyed evidence is the most appropriate remedy. The fact that the spoliated Twitter communications were made unavailable by Defendant SE's willful conduct requires a punitive response. If the Court determines that default judgment is too harsh a penalty, then an adverse inference that the spoliated Twitter communications contained information that was damaging to Defendant SE, and that it was deleted to prevent Plaintiff's discovery and/or use of the same "level the evidentiary playing field."

### 5. Plaintiff's Legal Fees and Expenses.

Plaintiff's counsel knows defense counsel to be good and honorable lawyers. Plaintiff has no reason to believe defense counsel would ever condone Defendant SE's behavior as complained of herein in any way, shape, or form. To that end, Plaintiff's counsel is also sure that defense counsel would not knowingly offer an imaginary person as a witness or evidence derived from the same. However, due to the severity and the ongoing nature of this spoliation issue, an award of Plaintiff's costs and fees associated with the instant motion is highly warranted.

Though they had previously spoken about it over the phone, Plaintiff's counsel emailed defense counsel about the matter specifically on March 3, 2021, asking them to remind their client of her preexisting obligation not to destroy evidence:

> We are once again asking that you remind your client of her preexisting obligation not to destroy, alter, or conceal evidence related to this matter,

electronic or otherwise. Mr. Santoni has evidence that Ms. Mueller is once again deleting her old tweets that are obviously relevant in this case. This spoliation needs to stop immediately. For the avoidance of doubt, please preserve all cell phones, hard-drives, computers, tablets, as well as electronically stored evidence including but not limited to cell phone data, emails, call logs, internet histories, records of communications, meta-data, GPS data, and/or social media/internet accounts related specifically to the allegations in this case and/or Ms. Mueller's interactions with or related to Mr. Santoni, his counterparties, and/or their represent**atives. Should discovery in this matter proceed, we will ask that all of the foregoing be made available to our experts at an agreed upon date and time, by digital download and/or physical inspection.**

**As to the tweets that have already been deleted, we propose that your client come clean and stipulate to their existence etc., which will save both parties the expense of the motion practice that will likely result from Mr. Santoni's seeking relief from the Court regarding this.** Additionally, please consider this correspondence our good faith consultation pursuant to the local rules regarding that motion practice. Do not hesitate to call if you have any questions or wish to discuss this further. Thank you for your time and attention to this matter. (emphasis added.)

Collective Exhibit M.

Defense counsel responded later that day in pertinent part:

**We have spoken with our client about this matter, and we are unsure of what your client is referring to.** If he would like to send over evidence of these claims, we will take a look at it. (emphasis added.) In addition, I hope you will send over the settlement offer we spoke about last week so that we can review it and discuss with our client.

*Id.*

Plaintiff's counsel replied later that day: "Is that a denial or not?" and did not receive a response.

*Id.*

After having to devote considerable time and expense to the matter. Plaintiff's counsel responded with a detailed analysis on March 16, 2020 as follows:

Though we are still investigating the matter on our end, it appears as though your client is deleting electronic evidence at an alarming clip. The @Miralaguna8 Twitter account, as referenced in our client's first document production (Bates #: 000223-000232), appears to have been completely

deleted during the pendency of this litigation. It has also come to our client's attention that the @sarahextra3770 Twitter account, as referenced in our client's first document production (Bates #:000233-000238), has been deleted. These Tweets were obviously relevant. These accounts appear to have been deleted in their entirety.

In one such example, another Twitter user who appears to be an attorney, and while engaged in her own disagreement with your client, appears to have posted her own screenshots of a couple of your client's missing tweets. In that example, your client appears to be claiming that she lives in a laguna beach mansion and is bragging about getting Mr. Santoni fired. See Exhibit A attached. The hyper-links below also constitute a non-exhaustive list of other examples. (Click and scroll up or down depending on your browser. You will notice multiple grey boxes that indicate where Tweets were deleted by the author.)

It now appears that hundreds of Tweets have been suspiciously deleted from the @sarahelizab370 Twitter account. Though we cannot see what your client said in these conversations, they are obviously relevant to this litigation, based solely on the statements of the other parties. This mass deletion appears to be hundreds if not thousands of Tweets. As such, please consider this email a consultation under the local rules regarding motion practice. It would likely save all parties the time and expense of seeking relief from the Court if your client was able to provide some context and we were able to stipulate as to what happened here. For the avoidance of doubt any settlement in this matter must include, Ms. Mueller providing a full and complete accounting of the spoliated evidence. Is she agreeable to this?

*Id.* That email contained links hyperlinks to 42 specific examples, each reflecting multiple deleted Tweets, as well as a pdf attachment with other specific examples. *Id.*

Having reached no resolution to the matter, Plaintiff's counsel sent the following to defense counsel on April 5, 2020:

Attached is a proposed Motion for Leave to Exceed the Page Limit as proscribed by Local Rule 7.01(a)(2). Please consider this email our consultation for that Motion pursuant to Local Rule 7.01(a)(1). This issue about the spoliated Twitter communications has gotten out of hand, and without your client's cooperation, our client has no choice but to seek relief from the Court. (emphasis added.)

On a related note, please have your client supplement the contact information for her "friend" Mira. Mira is identified in Ms. Mueller's Rule 26 initial disclosures merely as "@miralaguna8", an individual who has

"information related to the nature of Plaintiff's online conduct and his behavior toward Ms. Mueller and others." Unfortunately, Mira's Twitter account appears to have been very recently deleted. However, I understand from other correspondence that Mira and your client have been friends for 15 years and worked together in real life rescuing marine wildlife in Laguna Beach, California. It therefore defies logic that your client does not have contact information for her aside from her Twitter handle. Please don't hesitate to call with questions/concerns.

*Id.*

As described above, Plaintiff's counsel went to considerable lengths to avoid having to burden the Court with the instant Motion. An award of Plaintiff's attorney and expert fees and expenses associated with the preparation and filing of the instant Motion is warranted.

**IV.    <u>CONCLUSION</u>**

Based on the foregoing, Plaintiff requests that this Honorable Court grant the instant Motion and the relief requested herein.

This 13th day of April 2021.

Respectfully submitted,

<u>/s/Jonathan M. Wolf</u>

Bruce S. Kramer (#7472)
6000 Poplar Ave, Suite 150
Memphis, TN 38119
bkramer@appersoncrump.com
901-271-2710

Jonathan M. Wolf (#35445)
Jonathan M. Wolf, PLLC
1515 Demonbreun St. Suite #1408
Nashville, TN 37203
Jonathan@wolf.lawyer
615-422-5545

*Counsel for Plaintiff Thomas E. Santoni*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing has been forwarded via the District Court E-File system, to the following on April 13, 2021.

Mark T. Freeman,
2126 21st Avenue South
Nashville, Tennessee 37212
Mark@Freemanfuson.com
Phone: 615-298-7272
Fax: 615-298-727

<u>/s/ **Jonathan M. Wolf**</u>
Jonathan M. Wolf