# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

THOMAS SANTONI,         )
                           )
      Plaintiff,       )
                           )     NO. 3:20-cv-00975
v.                         )     JUDGE RICHARDSON
                           )
SARAH ELIZABETH MUELLER, et al.,  )
                           )
      Defendants.    )
                           )
                           )

## MEMORANDUM OPINION

Pending before the Court is "Defendant's Motion to Dismiss, To Stay Discovery, and for Attorney Fees and Sanctions" (Doc. No. 14, "Motion") filed by Defendant Sarah Mueller ("Defendant"), supported by an accompanying Memorandum of Law. (Doc. No. 15). Plaintiff, Thomas Santoni, filed a Response (Doc. No. 67, "Response"). Defendant did not file a reply. For the reasons stated herein, Defendant's Motion will be **GRANTED in part** and **DENIED in part**.

## BACKGROUND[1]

Plaintiff is a citizen and resident of Williamson County, Tennessee. (Doc. No. 1 at 1). Defendant is presently a citizen and resident of Arizona. (*Id.*). Plaintiff identifies as a businessman who "as a hobby . . . used various social media platforms" to discuss topics like politics, religion, and world history. (*Id.* at 2). While active on social media, Plaintiff utilized a pseudonym to

---

[1] The facts in this section are, except as otherwise indicated, taken from the Complaint (Doc. No. 1) and, as discussed below, are taken as true for the purposes of the Court's analysis under Fed. R. Civ. P. 12(b)(6). For the Court's 12(b)(2) analysis, additional facts taken from Plaintiff's Response to Defendant's Motion will be considered by the Court, as also discussed below. These facts will be noted at the end of the instant Background section, and the Court will discuss the appropriate consideration of the facts on a Fed. R. Civ. P. 12(b)(2) motion in the Standard section of this opinion.

maintain his privacy. (*Id.*). Over time, his accounts developed a following and he found himself, "often engaged in debate . . . and banter with professional journalists, political pundits, celebrities, and other full-time intellectuals and creatives." (*Id.* at 2-3).

Plaintiff also found himself engaging with Defendant, where the two interacted on Twitter from 2016 until the spring of 2019. (*Id.* at 3). They never met in person. (*Id.*). At times, the interactions between Plaintiff and Defendant would become so "heated" that Plaintiff would end up blocking Defendant from contacting him. (*Id.*). However, Plaintiff would eventually be compelled to unblock Defendant; this cycle repeated multiple times between 2018 and 2019. (*Id.*). The cycle concluded on June 7, 2019 when Plaintiff permanently lost access to his Twitter account and transitioned to another social media site instead. (*Id.*). Defendant sought to establish contact with Plaintiff on the new site, but he refused to engage, which resulted in Defendant exhibiting a "pattern of harassment and tortious conduct." (*Id.*).

Between October 2018 and March 2020, Defendant hacked or attempted to hack into three different "internet network accounts that were at one time owned or operated by Plaintiff and/or his family," including Plaintiff's email account. (*Id.* at 4). Through this access, Defendant was able to illegally obtain personal information about Plaintiff, which she used to hack into additional accounts belonging to Plaintiff and/or his family. (*Id.*). Defendant was able to discover who Plaintiff was involved in business and contractual relationships with and then contact them in an effort to cause them to breach their contractual agreements with Plaintiff. (*Id.* at 5). Defendant was successful in causing some of Plaintiff's relationships to breach their contracts with him. (*Id.*).

Defendant also contacted Plaintiff's friends and family by posting to their public social media profiles, as well as privately messaging them about Plaintiff. (*Id.*).

Plaintiff filed this current action on November 11, 2020, alleging the following claims:

- Count I – Tortious Interference (Tenn. Code Ann. § 47-50-109)
- Count II – Violation of Tennessee Wiretapping and Electronic Surveillance Act (Tenn. Code. Ann. § 39-13-601, et seq)
- Count III – Violation of Tennessee Personal and Commercial Computer Act of 2003 (Tenn. Code. Ann. § 39-14-601, et seq.)
- Count IV – False Light
- Count V – Violations of Stored Communication Act (18 U.S.C. § 2701)
- Count VI – Intentional Infliction of Emotional Distress ("IIED")
- Count VII – Violation of Federal Wiretap Act (18 U.S.C. § 2511 et. Seq).

The claims are brought against Defendant Sarah Mueller (who filed this present Motion), as well as Defendants Does #1-3, who Plaintiff identifies as individuals who "upon information and belief . . . assisted, acted in concert with, and/or conspired with Defendant [Mueller] to the detriment of Plaintiff." (Doc. No. 1 at 1). Plaintiff acknowledges he does not currently know the identities of Does #1-3. (*Id.*).

The additional facts relevant to the Court's 12(b)(2) analysis are included below. During her deposition, Defendant stated she was living in Tennessee and then left for Arizona on April 6, 2018. (Doc. Nos. 67 at 6, 67-2 at 2). Defendant is currently employed by Medical Income Concepts Inc. (a company with its principal place of business in Waynesboro, Tennessee), where she has worked since 2018. (Doc. No. 67 at 9-10).

Over the course of her engagement with Plaintiff, Defendant sent at least thirteen emails to the State Group (a company headquartered in Franklin, Tennessee). (Doc. Nos. 67 at 2 and 67-1). Defendant's first email to the State Group was on December 11, 2019, a point at which she knew Plaintiff was the CEO of the State Group and a member of its board of directors. (Doc. No. 67 at 7-8). Defendant also contacted Adam Blumenthal, the CEO of the private equity firm, Blue Wolf

Capital Partners, LLP, which was investing in the State Group, and Jonathan L. Sulds, an attorney with the law firm Greenberg Traurig, P.A., who represented the State Group and Blue Wolf Capital Partners. (*Id.* at 8). Both Mr. Blumenthal and Mr. Sulds were physically located in New York at the point of contact with Defendant but were representatives of or investors in the State Group. (*Id.*).

## STANDARD

### I. Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

Defendant filed this Motion, in part, pursuant to Fed. R. Civ. P. 12(b)(2), which provides for dismissal of a claim for lack of personal jurisdiction. A plaintiff bears the burden of establishing the court's personal jurisdiction over the defendant.[2] *Elcan v. FP Assocs. LTD*, Case No. 3:19-cv-01146, 2020 WL 2769993, at *3 (M.D. Tenn. May 28, 2020). On a 12(b)(2) motion to dismiss, district courts have discretion to either decide the motion on affidavits alone, permit discovery on the issue, or conduct an evidentiary hearing. *Id.* (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). Where, as here, the court rules without conducting an evidentiary hearing, the plaintiff's burden of proof is "relatively slight." *Id.* (citing *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017)).

Nevertheless, "[i]n response to a motion to dismiss, the plaintiff may not stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction." *Ramsey v. Greenbush Logistics, Inc.*, 263 F. Supp. 3d 672, 676 (M.D. Tenn. 2017) (quoting *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012)). "In other words, a 'plaintiff may not simply rest on the bare allegations of the complaint. But uncontroverted allegations must be taken

---

[2] As noted below, however, if the plaintiff meets his burden of establishing the first two elements of specific (as opposed to general) personal jurisdiction, the burden shifts to the defendant as to the third element—*i.e.*, to *refute* that the exercise of personal jurisdiction over the defendant would be reasonable.

as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *Johansen v. HomeAdvisor, Inc*., 218 F. Supp. 3d 577, 583 (S.D. Ohio 2016) (quoting *Ranza v. Nike, Inc*., 793 F.3d 1059, 1068 (9th Cir. 2015)).

Moreover, when a district court rules on a motion to dismiss under Rule 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *Elcan*, 2020 WL 2769993, at *3. The Sixth Circuit has held that a court disposing of a Rule 12(b)(2) motion without an evidentiary hearing should not weigh the controverting assertions of the party seeking dismissal, because "we want to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (citation and quotation marks omitted). "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff [] alleges collectively fail to state a prima facie case for jurisdiction." *Id*. "In this procedural posture [without an evidentiary hearing], the court does not weigh the facts disputed by the parties but may consider the defendant's undisputed factual assertions." *Camps v. Gore Capital, LLC*, No. 3:17-cv-1039, 2019 WL 2763902, at *4 (M.D. Tenn. July 2, 2019).

It is not necessarily easy to reconcile all the above-referenced rules with one another, because, at least superficially, they could be understood to say different things about the extent to which the district court must accept as true the allegations of the complaint.[3] But the Court believes

---

[3] The tension on this point can be found not only among various cases decided by or within the Sixth Circuit, but also in other extant primary or secondary authority—which sometimes insists in one breath that the allegations of the complaint must be taken as true on a defendant's motion to dismiss for lack of personal jurisdiction, then insists in the next breath that (at least of the defendant's motion is "properly supported") the allegations of the plaintiffs complaint count for nothing on such a motion. *See, e.g.*, 1 Litigating Tort Cases § 3:16 ("As a general rule applicable to both federal and state courts, [w]hen ruling on a motion to dismiss for lack of personal jurisdiction, a court must accept the allegations in the complaint as true. Once the defendant challenges jurisdiction, the burden shifts to the plaintiff to establish with competent evidence that the court may exercise jurisdiction. The plaintiff's response must be with actual proofs, not mere allegations." (internal quotation marks omitted)).

that they can be reconciled. And the upshot seems to be this: in opposing a motion to dismiss for lack of personal jurisdiction, a plaintiff cannot rely on mere allegations in the complaint, unless they are uncontroverted by the defendant-movant—in which case they can be accepted as true, as can the averments in the plaintiff's declarations (even if contradicted) and the defendant's undisputed factual assertions.

Because there has been no evidentiary hearing with regard to Defendant's Motion, the Court will determine whether Plaintiff has demonstrated personal jurisdiction over Defendant under a *prima facie* standard, rather than the heavier preponderance of the evidence standard. *Camps*, 2019 WL 2763902, at \*\*4-5. "A *prima facie* showing means that the plaintiff has produced admissible evidence, which if believed, is sufficient to establish the existence of personal jurisdiction." *Reyes v. Freedom Smokes, Inc*., No. 5:19-CV-2695, 2020 WL 1677480, at \*2 (N.D. Ohio Apr. 6, 2020) (quoting *Death v. Mabry*, No. C18-5444 RBL, 2018 WL 6571148, at \*2 (W.D. Wash. Dec. 13, 2018)).

In a diversity case such as this one, a plaintiff must satisfy the state-law requirements for personal jurisdiction. *Camps*, 2019 WL 2763902, at \*5; *Bulso v. O'Shea*, No. 3-16-0040, 2017 WL 563940, at \*1 (M.D. Tenn. Feb. 13, 2017) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."), *aff'd sub nom. Bulso v. O'Shea*, 730 F. App'x 347 (6th Cir. 2018). Tennessee law (its so-called "long-arm" statute) authorizes its courts to exercise jurisdiction over persons on "any basis not inconsistent with the constitution of this state or of the United States." *Bulso*, 2017 WL 563940, at \*1 (citing Tenn. Code Ann. § 20-2-214(a)(6)). Therefore, the Court must decide whether the exercise of jurisdiction comports with the limits imposed by federal due process, without having to analyze separately whether Tennessee law authorizes the exercise of jurisdiction. *Id.*; *see also Camps*, 2019 WL 2763902, at \*5 ("In other

words, the jurisdictional limits of Tennessee law and federal constitutional due process are identical, and the two inquiries are merged.").

Personal jurisdiction comes in two forms: general and specific. *TailGate Beer, LLC v. Boulevard Brewing Co.*, No. 3:18-cv-00563, 2019 WL 2366948, at *2 (M.D. Tenn. June 5, 2019). Plaintiff does not assert that the Court has general jurisdiction[4] over Defendant. (Doc. No. 67 at 4). Rather, Plaintiff alleges that the Court has specific jurisdiction over Defendant.

The Court will have specific jurisdiction over Defendant if Plaintiff shows that: (1) Defendant purposefully availed herself of the privilege of acting in Tennessee or causing a consequence in Tennessee; (2) the causes of action herein arose from or relate to Defendant's activities in Tennessee; (3) Defendant's action in Tennessee or the consequences caused by her actions directed towards Tennessee are substantial enough to make the exercise of personal jurisdiction over her reasonable. *TailGate Beer*, 2019 WL 2366948, at *2 (quoting *Means v. United States Conference of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016)),

A. Purposeful availment

Purposeful availment is present where the defendant's contacts with the forum state proximately result from actions by the defendant herself that create a substantial connection with the forum. *TailGate Beer*, 2019 WL 2366948, at *4. The question is whether the defendant acted or caused a consequence in Tennessee such that she "invoked the benefits and protections" of Tennessee law and, thus, could have reasonably anticipated being brought into court there. *Elcan*, 2020 WL 2769993, at *4. "The contacts must be the defendant's own choice and not 'random,

---

[4] "General jurisdiction" requires that a plaintiff have continuous and systematic contacts with the forum state, such that a corporation is "essentially at home" in the forum state. *Tailgate Beer*, 2019 WL 2366948, at *2 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014)). In his Response, Plaintiff does not argue, let alone establish, that Defendant has such contacts with the state of Tennessee.

isolated, or fortuitous.'" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (quoting *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 774 (1984)).

A court can have jurisdiction over a defendant even if the defendant has few contacts with the forum, but the defendant must have done something to create a contact with the forum. *Winston*, 2020 WL 3259531, at *7. The inquiry is whether "the defendant's actions connect him to the forum," so the analytical focus should not be on the plaintiff's contacts with the defendant and/or the forum. *Walden*, 571 U.S. at 289. Thus, the unilateral activity of the plaintiff or a third party cannot be the basis of exercising personal jurisdiction over a defendant. *Camps*, 2019 WL 2763902, at *6.

B. Arise out of or relate to

As the Supreme Court recently reiterated in *Ford Motor Co.*, plaintiff's claims "must arise out of or relate to the defendant's contact," meaning "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." 141 S. Ct. at 1025 (citing *Bristol-Myers Squibb*, 137 S. Ct. at 1780). However, specific jurisdiction does not require "proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Ford Motor Co.*, 114 S. Ct. at 1026. (citing *Bristol-Myers Squibb*, 137 S. Ct. at 1779-80, 1780-81). There are certain relationships between a defendant and a forum state that will support specific jurisdiction "without a casual showing." *Id.*[5] In the Sixth Circuit, "[i]f a

---

[5] In *Ford Motor Corp.*, the Court found that the defendant was subject to specific jurisdiction because it had systematically targeted the forum states (Montana and Minnesota) for marketing the vehicles (through advertising, selling, and servicing those models in the states for many years) that injured the plaintiffs, though the particular vehicles involved in the case were not designed, manufactured, or sold in the forum states. *Id.* at 1028. The Court rejected the defendant-appellant's focus on causation and stated that the disjunctive nature of the "arise out of *or* relate to" test indicates that causation does not *necessarily* have to be present. *Id.* at 1026. In his concurrence, Justice Alito agreed with the majority declining to adopt the

defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *TailGate Beer*, 2019 WL 2366948, at *5 (quoting *CompuServe, Inc.*, 89 F.3d at 1267).

## C. Reasonableness

If a court finds that the plaintiff has established the first two prongs of the specific-jurisdiction inquiry, the burden shifts to the defendant to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *TailGate Beer*, 2019 WL 2366948, at *6. The burden on the defendant to meet this prong is high. *Id.* The Sixth Circuit has stated that "[i]n determining reasonableness, we examine three factors: (1) the burden on the defendant; (2) the forum state's interest; and (3) the plaintiff's interest in obtaining relief." *Bulso*, 730 F. App'x at 351.[6]

## II. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To

---

defendant's "but for" characterization of the specific jurisdiction test, but he expressed concern that the majority was "recogniz[ing] a new category of cases in which personal jurisdiction is permitted: those in which the claims do not 'arise out of' (*i.e.*, are not caused by) the defendant's contacts but nevertheless sufficiently 'relate to' those contacts in some undefined way." *Id.* at 1033.

Ultimately, this case does not require the Court to determine whether this is an instance where the claim "relates to," even without "arising out of," Defendant's conduct in the forum state, as Plaintiff argues only that "Plaintiff's causes of action arise out of Defendant's activities in the State of Tennessee." (Doc. No. 67 at 11). Moreover, even were the Plaintiff to have argued otherwise, the Sixth Circuit has long defined "arises out of" broadly to include, essentially, "related to," so it appears that in the Sixth Circuit, a separate argument framed in term of "related to" (as opposed to "arises out of") would be duplicative.

[6] Other courts have found five factors to be relevant in determining the reasonableness of exercising personal jurisdiction: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *TailGate Beer*, 2019 WL 2366948, at *6 n. 4 (citing *Susan McKnight, Inc. v. United Indus. Corp.*, 273 F. Supp. 3d 874, 888 (W.D. Tenn.

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), cited in *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id.* at 681. The question is whether the remaining allegations – factual

2017)). The undersigned questions, as he has before, *id.*, why the reasonableness of a particular forum's assertion of personal jurisdiction over a particular defendant—a question that is at bottom about *due process* for that defendant—should turn at all upon the last two concerns, which actually have nothing whatsoever to do with due process to defendants (or, for that matter, to the interests of the particular forum state in asserting jurisdiction over the defendant). In any event, following the Sixth Circuit's lead as noted above, the Court will not apply those two factors.

allegations, i.e., allegations of factual matter – plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 433 (6th Cir.2008). That is not to say that the movant has some evidentiary burden; as should be clear from the discussion above, evidence (as opposed to allegations as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of explanation; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

## DISCUSSION

### I.     The Motion will be denied to the extent that it is brought under Rule 12(b)(2) because Plaintiff has made a *prima facie* showing that this Court has personal jurisdiction over Defendant.

In her Motion, Defendant argues that the Court lacks personal jurisdiction over her because she has not been a resident of Tennessee since early 2018 and she directed her behavior, not at the State of Tennessee, but at Plaintiff's counterparts located in New York. (Doc. No. 15 at 3-4).

Plaintiff responds that the Court has specific jurisdiction over Defendant because she purposely availed herself of the State of Tennessee when she directed activities at citizens in the state and because the causes of action at the heart of this case "arise out of" her activities in Tennessee. (Doc. No. 67 at 6, 10). Because the Court has declined to hold an evidentiary hearing, the applicable standard is a *prima facie* standard. *Camps*, 2019 WL 2763902, at **4-5.

As noted above, specific jurisdiction is the only type of personal jurisdiction Plaintiff alleges. To establish it, as also noted above, Plaintiff must show that: (1) Defendant purposefully availed herself of the privilege of acting in Tennessee; (2) the causes of action herein arose from or relate to Defendant's activities in Tennessee; and (3) the exercise of personal jurisdiction over Defendant would be reasonable. *TailGate Beer*, 2019 WL 2366948, at *2.

First, purposeful availment considers whether Defendant's relationship with the forum state arises out of voluntary contacts. In this case, Defendant initially began conversing with Plaintiff on Twitter in May 2017, while she was living in Tennessee (and multiple months prior to her move to Arizona). (Doc. No. 67 at 5).[7] Additionally, Defendant sent several emails about Plaintiff to the State Group, a Tennessee-based company, as well as representatives and agents of the State Group. (Doc. Nos. 67 at 7, 67-1). As noted by the Sixth Circuit, "[w]hen the actual content of the communications into the forum gives rise to an intentional tort action, that alone may constitute purposeful availment." *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001); *see also ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002) (cited positively by *Mark Hanby Ministries, Inc. v. Lubet*, No. 106-CV-114, 2007 WL 1004169, at *8 (E.D. Tenn. Mar. 30, 2007)) ("[A] State may, consistent with due process, exercise judicial power over a person

---

[7] Here, Plaintiff's Response cites to his "Memorandum of Law in Support of his Motion for Leave to Conduct Limited Jurisdictonal [sic] Discovery" (Doc. No. 34), which he incorporates by reference. Within this memorandum, Plaintiff included a screenshot from a Twitter interaction between himself and Defendant, which displays the date May 31, 2017. (*Id.* at 4).

outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts."). Notably, it appears that Defendant not only knew of the connection between Plaintiff and Tennessee, but was actually motivated, in part, by such connection. In an email to Jonathan Sulds, Defendant wrote, "I know from the website for The State Group that it's now headquartered in Franklin, Tennessee . . . This is part of the reason I made my complaint." (Doc. No. 67-1 at 13).

In addition to establishing purposeful availment, Defendant's contacts with the State Group, as well as her contact with Plaintiff and his family members, give rise to some of the causes of action in this case, which establishes the second prong of specific jurisdiction: arising out of or relating to. In regard to the final prong, Defendant made no arguments that this Court exercising personal jurisdiction over her would be unreasonable, which means she failed to carry her burden. *TailGate Beer*, 2019 WL 2366948, at *6.

Reviewing Plaintiff's proffered evidence[8] and drawing any inferences in his favor, the Court must find that Plaintiff has established, under a *prima facie* standard, that this Court has

---

[8] Plaintiff's counsel has averred the authenticity of all documents cited by the Court in its evaluation of Defendant's 12(b)(2) motion via two declarations (Doc. Nos. 34-6 and 67-8), so the Court can accept the evidence as authentic at this stage.

specific personal jurisdiction over Defendant. Defendant's Motion will be denied insofar as it seeks dismissal for lack of personal jurisdiction under Rule 12(b)(2).

## II. The Motion will be denied to the extent it seeks dismissal of Counts I and VI under Rule 12(b)(6) because each of those Counts adequately state a claim but granted as to Count IV for failure to plead negligence.

In the alternative to her personal jurisdiction argument,[9] Defendant argues that three of Plaintiff's claims should be dismissed for failure to state a claim. Specifically, Defendant challenges Plaintiff's claim in Count I for Tortious Interference, Plaintiff's claim in Count IV for False Light, and Plaintiff's claim in Count VI for Intentional Infliction of Emotional Distress.

### A. The Court cannot consider Defendant's attached exhibit on a Rule 12(b)(6) motion to dismiss.

The Court will first discuss Defendant's request that the Court "consider the email attached as Exhibit 2 for purposes of her Rule 12(b)(6) motion." (Doc. No. 15 at 5). Defendant argues that the email in question is integral to Plaintiff's Complaint because the Complaint alleges that Defendant interfered with Plaintiff's contractual relationships by inducing some of the relationships to breach their contractual agreements, and the "interference" referenced is the email in question, which Defendant sent to Blue Wolf Capital Partners, LLP. (*Id.*). As discussed above, the Court may not consider documents outside the pleadings without converting a motion to dismiss to one for summary judgment except in limited circumstances. Defendant suggests the limited circumstance of a document that is "incorporated into the complaint by reference and [is]

---

[9] Defendant was quite clear that she was requesting dismissal under Rule 12(b)(6) only *conditionally*, *i.e.*, only if the Court founds that it could exercise personal jurisdiction over Defendant. Defendant was prudent to frame her request for dismissal under Rule 12(b)(6) in this qualified manner because a defendant who does not do—*i.e.*, who makes an apparently unqualified request that the Court exercise jurisdiction to grant a dismissal pursuant to Rule 12(b)(6), which generally is a dismissal *on the merits*—risks being deemed to have waived its challenge to the Court's exercise of personal jurisdiction. *See Brunson v. Capitol Cmg, Inc.*, No. 3:20-CV-01056, 2021 WL 3081327, at *2 (M.D. Tenn. July 21, 2021), *motion to certify appeal denied*, No. 3:20-CV-01056, 2021 WL 3406686 (M.D. Tenn. Aug. 4, 2021).

central to the plaintiff's claim," *Blanch*, 333 F. Supp. 3d at 792, is applicable to this present scenario. The Court disagrees. The email in question may ultimately prove to be central to Plaintiff's claims, but that is not presently clear from the Complaint, nor can the Court accept Defendant's argument that the email in question is "incorporated" into the Complaint through a general reference to "interference" that makes no reference specifically to interference in the form of, or via, the email proffered by Defendant. For that reason, the Court will decline to consider the attached email while evaluating Defendant's argument for dismissal of certain claims under Rule 12(b)(6).

B. **Plaintiff's Count I plausibly asserts entitlement to relief for tortious interference and thus survives Defendant's motion to dismiss.**

The Court will first discuss Defendant's motion to dismiss regarding Count I, which asserts a claim for tortious interference. Plaintiff brings a tortious interference claim under the following Tennessee statute:

> It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

Tenn. Code Ann. § 47-50-109.[10] The statutory version of tortious interference has the following elements:

> (1) that there was a legal contract; (2) that the wrongdoer had sufficient knowledge of the contract; (3) that the wrongdoer intended to induce its breach; (4) that the

---

[10] The Court acknowledges there is also a common law version of tortious interference in Tennessee, which was established by the Tennessee Supreme Court in *Trau-Med of America, Inc. v. Allstate Ins. Co*., 71 S.W.3d 691 (Tenn. 2002). The common law cause of action differs from the statutory one in that it relates not only to *actual* contracts but also to *prospective* contractual relations and to business relationships *not* entailing a formal contract. *Id.* at 701 & n. 4. Additionally, the statutory version of tortious interference allows for treble damages. *See Clippinger v. Audatex North America, Inc.*, No. 2:20-cv-02501-TLP-atc,

wrongdoer acted maliciously; (5) that the contract was breached; (6) that the act complained of was the proximate cause of the breach; and (7) that damages resulted from the breach.

*Baldin v. Pirelli Armstrong Tire Corp.*, 927 F. Supp. 1046, 1055 (M.D. Tenn. 1996) (quoting *TSC Indust., Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987)); *see also Davidson & Jones Development Co. v. Elmore Development Co., Inc.*, 921 F.2d 1343, 1355 (6th Cir. 1991).

Defendant challenges only the fourth element of the cause of action, arguing that Plaintiff has failed to adequately allege malice on the part of Defendant. (Doc. No. 15 at 7). In the context of tortious interference, malice "does not require illwill [sic] or spite toward the injured party." *In re AM Int'l., Inc.*, 46 B.R. 566, 575 (Bankr. M.D. Tenn. 1985). Nor does it mean, as it tends to mean in colloquial contexts, an intent or desire to hurt another. Instead, malice is defined as "the willful violation of a known right." *Id.* (quoting *Edwards v. Travelers Insurance*, 563 F.2d 105, 121 (6th Cir. 1977)); *see also Clippinger*, 2021 WL 1823117, at *3 ("[T]o show malice, the plaintiff must allege the defendant's 'willful violation of a known right.'") (quoting *Prime Co. v. Wilkinson & Snowden, Inc.*, No. W2003-00696-CA-R3CV, 2004 WL 2218574, at *4 (Tenn. Ct. App. Sept. 30, 2004)). This means that to properly plead malice in a tortious interference claim, Plaintiff must allege that Defendant acted intentionally and without legal justification. *Clippinger*,

_____

2021 WL 1823117, at *3 (W.D. Tenn. May 6, 2021). A final difference between the common law version of tortious interference and the statutory version is that the common law version has only five elements, compared to the statutory version's seven elements. The common law elements are:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means ... and finally, (5) damages resulting from the tortious interference.

*Kolstad v. Leehar Distributors, LLC*, No. 3:18-CV-00060, 2018 WL 6832086, at *6 (M.D. Tenn. Dec. 28, 2018) (quoting *Trau-Med*, 71 S.W.3d at 701). In his Response, Plaintiff argues that the elements from the common law version apply to his claim, but his Complaint clearly references the statutory version of tortious interference, so the Court will proceed using the elements from Tenn. Code. Ann. § 47-50-109.

2021 WL 1823117, at *3. "Interference is without justification if it is done for the indirect purpose of injuring plaintiff or benefiting the defendant at the plaintiff's expense." *Crye-Leike Realtors, Inc. v. WDM, Inc*., No. 02A01-9711-CH-00287, 1998 WL 651623, at *6 (Tenn. Ct. App. Sept. 24, 1998) (quotation omitted). In *Crye-Leike*, the Tennessee Court of Appeals held that a leasing agent who was aware of an ongoing real estate relationship between an individual and Crye-Leike Realtors but still acted to conduct a lease transaction involving the individual that benefited himself [the leasing agent] at the expense of Crye-Leike acted with sufficient malice to support a tortious interference claim. *Id.* at *6.

In the present action, Plaintiff's Complaint states Defendant utilized illegally obtained personal information "to ascertain various persons with whom Plaintiff was in contractual relationships." (Doc. No. 1 at 5). The Complaint continues, "[a]fter becoming aware of Plaintiff's contractual counterparties, Defendant SE subsequently set about intentionally and maliciously to interfere with Plaintiff's contractual relationships . . . ." by "supplying [them] with data, documents, and/or information that was illegally obtained in whole or in part, and/or which was either false, misleading, or inaccurate." (*Id.*). Additionally, Plaintiff's Complaint includes a screenshot of a comment Defendant left on Plaintiff's son's Instagram account in September of 2020, which includes the following lines, "[Plaintiff] is one abusive lying clown," "This clown needs to keep his threats in his home," and "I'm not the secret keeper of abusive men." (*Id*. at 67). Drawing all inferences from these allegations in the light most favorable to Plaintiff as required, the Court concludes that Plaintiff has sufficiently alleged that Defendant intentionally sought out information about Plaintiff's contractual counterparts, and then intentionally contacted those contractual counterparts with the (at minimum, indirect) purpose of harming Plaintiff and his relationships. Thus, Plaintiff has adequately alleged that Defendant's actions were intentional and

without justification, and Plaintiff has sufficiently pled "malice" as that term is construed for purposes of a tortious interference claim.

C.  Based on the allegations of the Complaint, Plaintiff does not qualify as a public figure and is thus not required to plead actual malice in his claims for False Light or Intentional Infliction of Emotional Distress.

Defendant puts forth respective arguments for dismissing Count IV (False Light) and Count VI (Intentional Infliction of Emotional Distress) that hinge on whether Plaintiff qualifies as a public figure and, if so, whether he adequately pled actual "malice" for purpose of these counts (which, notably, is not the same thing as "malice" for purposes of Count I). Defendant argues that the claims in Count IV and Count VI require Plaintiff to adequately allege actual malice because (according to Defendant) such is required for plaintiffs who are public figures and Plaintiff is a public figure.[11] Defendant states that Plaintiff "made himself a public figure . . . by thrusting himself into the vortex of important public controversies." (Doc. No. 15 at 8-9) (quotations omitted). Plaintiff disagrees, not disputing that actual malice is required for plaintiffs who are public figures, but rather arguing that he is not a public figure, because he participated in social media via a pseudonym and he never thrust himself into any public controversies. (Doc. No. 67 at

---

[11] Defendant cites to *Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988) for the proposition that public figures must plead actual malice to recover for intentional infliction of emotional distress. However, *Hustler* does limit this requirement to claims based on publication of some sort of information or statement, explaining, "We conclude that public figures and public officials may not recover for the tort of intentional infliction of emotional distress by reason of publications . . . without showing in addition that the publication contains a false statement of fact which was made with "actual malice." *Id.* However, the Court does not believe this limitation changes the analysis for two reasons. First, Plaintiff's claim for intentional infliction of emotional distress is rooted in the alleged publication by Defendant of information and statements to Plaintiff's "contractual counterparts." (Doc. No. 67 at 22-23). Second, in his Response, Plaintiff makes no argument that the actual malice standard does not apply to his claim for intentional infliction of emotional distress because it does not involve publication; Plaintiff's argument for why he was not required to plead actual malice is based only in his argument that he not a public figure. (*Id.* at 22).

20). Alternatively, Plaintiff argues that if he is found to be a public figure, he adequately alleged actual malice.

Actual malice is a constitutional protection "necessary to give adequate breathing space to the freedoms protected by the First Amendment." *Compuware Corp. v. Moody's Invs. Servs., Inc.*, 499 F.3d 520, 530 (6th Cir. 2007) (quoting *Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988)). The actual malice standard was originally codified in *New York Times Co. v. Sullivan*, where the Supreme Court held that actual malice—meaning "with knowledge that it was false or with reckless disregard of whether it was false or not"—must be proven before a public figure could recover on any defamation claims. 376 U.S. 254, 279-280 (1964). This standard was then expanded to other tort claims predicated on defamatory speech including false light claims and intentional infliction of emotional distress claims. *See Armstrong v. Shirvell,* 596 F. App'x 433, 444 n.3 (6th Cir. 2015) ("The requirement that a plaintiff demonstrate actual malice when he is a public figure also applies in the context of false light and intentional infliction of emotional distress."); *Nichols v. Moore*, 393 F. Supp. 2d 783, 799 (E.D. Mich. 2005) (finding that the "actual malice" requirement applied to an intentional infliction of emotional distress claim from a public figure); *West v. Media General Convergence, Inc.*, 53 S.W.3d 640, 647 (Tenn. 2001) ("We hold that actual malice is the appropriate standard for false light claims when the plaintiff is a public official or public figure.").

Public figures come in two varieties: general-purpose public figures and limited-purpose public figures. *Thomas M. Cooley L. Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 527 (6th Cir. 2014).

> A limited-purpose public figure is a public figure with respect to "a limited range of issues," and one achieves that status by "voluntarily inject[ing] himself ... into a particular public controversy." A general-purpose public figure is one who attains

"such pervasive fame or notoriety that he becomes a public figure for all purposes
and in all contexts."

*Id.* (quoting *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 342 (1974)). Defendant does not argue that Plaintiff is a general-purpose public figure, nor could the Court come to such a conclusion. However, Defendant does suggest that Plaintiff is a limited-purpose public figure.

Both federal courts and Tennessee state courts utilize a two-step approach to determine whether an individual is a limited-purpose public figure. *See Clark v. ABC, Inc*., 684 F.2d 1208, 1218 (6th Cir. 1982) (citing *Gertz*, 418 U.S. at 352); *Hibdon v. Grabowski*, 195 S.W.3d 48, 59 (Tenn. Ct. App. 2005). The first step is for the Court to determine whether there is a public controversy. *Clark*, 684 F.2d. at 1218; *Hibdon*, 195 S.W.3d at 59. "A public controversy is defined as a real dispute, the outcome of which affects the general public or some identifiable segment of the public in an appreciable way." *Hibdon*, 195 S.W.3d at 59. The public controversy in question must be what "g[ave] rise to the defamation." *Gertz*, 418 U.S. 352. The second step is for the Court to determine whether Plaintiff has become so involved in the public controversy as to constitute a public figure via his involvement. *Id.*; *see also Clark*, 684 F.2d at 1218. There are three factors to consider in reviewing Plaintiff's involvement in a public controversy: the voluntariness of the involvement, the extent to which Plaintiff had access to channels of communication in order to counteract false statements, and the prominence of his role. *Clark*, 684 F.2d at 1218; *see also Hibdon*, 195 S.W.3d at 62.

In considering the first step, the Court finds the Sixth Circuit's decision in *Armstrong* instructive. *Armstrong* involved a defendant who "engaged in an online and in-person" smear campaign against the plaintiff, Armstrong. 596 F. App'x at 437. The defendant posted on Facebook and other websites that the plaintiff (Armstrong) was "dangerous," a "racist," anti-Christian, and comparable to Nazis, among many other insults. *Id.* at 437-38. When Armstrong brought claims

against the defendant for defamation, false light, and intentional infliction of emotional distress, the defendant argued that Armstrong was a limited-purpose public figure. *Id.* at 441, 445. The Sixth Circuit held that Armstrong was not a limited purpose public figure, because:

> [the defendant's] defamatory remarks did not relate to any public controversy. For example, the jury found that [the defendant] repeatedly referred to Armstrong as a racist and a liar, or words to the same effect, and alleged that Armstrong mocked and attacked Christianity. No public controversy existed as to Armstrong's honesty or his views on race or religion. There is no evidence that anyone besides [the defendant] saw Armstrong's character for truthfulness as a live issue or a subject of debate. Nothing in the record indicates that any public controversy existed over Armstrong's religious views or his behavior toward Christians. Similarly, there is no evidence of public dispute over Armstrong's treatment of—or views on—others based on their races.

*Id.* at 445.

Similarly, in the present case, there is no public controversy that gave rise to the statements by Defendant that form the basis for Plaintiff's claims of false light and intentional infliction of emotional distress. Plaintiff's Complaint does not contain many specific examples of the alleged comments/communications made by Defendant, but from what the Court can glean (and drawing inferences in the light most favorable to Plaintiff as required)[12] Defendant's statements appear to be related to Plaintiff's behavior online. (Doc. No. 1 at 6). Though Plaintiff's online activity may have included involving himself in conversations regarding political or religious controversies, the substance of Defendant's alleged tortious comments relates not to those controversies, but to Plaintiff's online behavior itself. And like in *Armstrong*, "[t]here is no evidence that anyone besides" Defendant saw Plaintiff's online behavior "as a live issue or a subject of debate." 596 F. App'x at 445. In short, based on the Complaint, Plaintiff is not a public figure (even a limited-

---

[12] Usually, to construe a complaint in the plaintiff's favor on a Rule 12(b)(6) motion to dismiss means to construe it, to the extent it is reasonable to do so, as alleging *more* rather than less on a material point. Here, however, construing the Complaint in Plaintiff's favor means to construe it, to the extent it is reasonable to do so, as alleging *less* as to the facts that would take Plaintiff (to his detriment) into the realm of a public figure who bears the high burden of establishing actual malice.

purpose one), because Defendant's alleged tortious comments related to a controversy *between her and* Plaintiff, which was not a controversy the outcome of which "affects the general public or some identifiable segment of the public in an appreciable way." *Hibdon*, 195 S.W.3d at 59. As the Court has determined no public controversy exists, it necessarily concludes in turn that Plaintiff is not a limited-purpose public figure without needing to proceed to the second step of considering Plaintiff's level of involvement in the (non-public) controversy at issue.[13] Thus, Plaintiff was not required to plead actual malice.

Accordingly, Plaintiff's claims for false light and intentional infliction of emotional distress will not be dismissed due to Plaintiff's alleged failure to adequately plead actual malice.

D. Plaintiff's Count IV for False Light will be dismissed as he did not properly plead negligence.

As an alternative to the argument that Plaintiff need to plead actual malice and failed to do so, Defendant made the additional argument (with respect to Count IV) that Plaintiff failed to plead negligence as required for a false light claim involving private individuals. (Doc. No. 15 at 9). In *West v. Media General Convergence, Inc.*, 53 S.W.3d 640, 641 (Tenn. 2001), the Tennessee Supreme Court adopted the elements of a tort for false light from the Restatement (Second) of Torts (1977). The Restatement reads:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> > (a) the false light in which the other was placed would be highly offensive to a reasonable person, and

---

[13] Not surprisingly, Plaintiff's involvement would have to be viewed as substantial indeed, considering that the alleged controversy was a very personal one between him and Defendant. But again, the Court determines that Plaintiff is not a public figure (of either kind) without even reaching this step.

> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E (1977). In *West*, the Court—breaking from the Restatement—additionally held that for false light claims involving private individuals about matters of private concern, negligence in placing the plaintiff in a false light is the appropriate standard (as opposed to the actual-malice standard discussed above). 53 S.W.3d at 648. In short, to adequately plead a claim of false light under Tennessee law in federal court (wherein the pleading standards of *Iqbal* and *Twombly* govern*)*, a plaintiff must allege factual matter plausibly suggesting that the defendant was negligent in placing the plaintiff in a false light—meaning negligent with respect to the falsity of the statements made about the plaintiff.[14] Negligence is not a particularly high pleading standard, but it must be met—and met with factual matter.

In portions relevant to his False Light claim, Plaintiff's Complaint states that Defendant "intentionally supplied Plaintiff's counterparties with data, documents, and/or other information that was . . . false, misleading, or inaccurate, to cast Plaintiff in a false light . . ." (Doc. No. 1 at 5). Plaintiff's Complaint also states, "By attributing the traits set forth in Defendants [sic] statements, Defendants placed Plaintiff in a false light before the public . . . Plaintiff is not as Defendants described him to his contractual counterparties." Besides the inclusion of the word "intentionally"—a conclusory assertion that Plaintiff failed to support with any factual matter as required by *Iqbal* and *Twombly*—the Court could find no reference in Plaintiff's Complaint as to

---

[14] As the Restatement's description of the tort of false light indicates, the way a defendant places a plaintiff in a false light is to do so by "giv[ing] publicity to a matter concerning [the plaintiff] that places the [plaintiff] before the public in a false light[.]" Restatement (Second) of Torts § 652E (1977). So, to be *negligent* "in placing the plaintiff in a false light," which is the term used in *West*, is to be *negligent* in giving publicity to the matter that places the plaintiff in a false light—which typically would entail being *negligent* with respect to the falsity of the "publicity" given by the defendant about the plaintiff. And since the "publicity" involved typically would be in the form of oral or written statements to third parties, the negligence *West* was referring to would typically be negligence with respect to the statements made about the plaintiff.

Defendant's requisite state of mind for the false light claim.[15] And as Plaintiff neglected to respond to Defendant's alternative argument for dismissal of the false light claim because of a failure to plead negligence, Plaintiff's Response points to no portions of the Complaint where the Court could potentially locate such a reference. Consequently, the Court finds that Plaintiff has failed to plead the Defendant acted negligently with regards to her conduct and/or statements that painted Plaintiff in a false light. Plaintiff's claim in Count IV for False Light will be dismissed for failure to state a claim.

## III. Defendant's Petition under the Tennessee Public Participation Act will be denied.

In addition to her 12(b)(6) motion, Defendant requests relief under the Tennessee Public Participation Act ("TPAA"). The TPAA's stated purpose is to "encourage and safeguard the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law." Tenn. Code Ann. § 20-17-102 (West). The TPPA additionally states that, "[i]f a legal action is filed in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may petition the court to dismiss the legal action." Tenn. Code Ann. § 20-17-104 (West). Defendant argues the TPAA

---

[15] Plaintiff's allegations can be contrasted with the allegations in *Malmquist v. Hearst Corp.*, No. 2:09–cv–2416–JPM–cgc, 2010 WL 1257800 (W.D. Tenn. Mar. 26, 2010), in which the court held that the plaintiff successfully pled negligence in his false light claim when he included the assertion that the defendants could have "'easily checked the accuracy of the information given' . . . or 'prevented the harm it has caused' by changing the names in the article." *Id.* Plaintiff's allegations likewise compare unfavorably with the allegations in *Hudick v. Fox News Network, LLC,* where this Court found that the plaintiff adequately pleaded negligence by alleging the defendant published a story that paraphrased a third-party's complaint about the plaintiff, claiming that the post was accusing the plaintiff of something more nefarious than the post was actually accusing the plaintiff of—a paraphrasing that a jury could find was not only false but negligently false. 512 F. Supp. 3d 816, 822-23, 835 (M.D. Tenn. 2021).

protection against legal action applies to this case since it was filed in response to the "exercise of her right to free speech regarding a matter of public concern." (Doc. No. 15 at 11).

This Court has previously discussed its opinion on the applicability of state-level anti-strategic lawsuit against public participation ("anti-SLAPP") statutes in federal court. *See Lampo Grp., LLC v. Paffrath*, No. 3:18-CV-01402, 2019 WL 3305143, at *1 (M.D. Tenn. July 23, 2019). In *Lampo Grp., LLC*, this Court held that, "Because Rules 8, 12, and 56 are valid under the Rules Enabling Act and the Constitution and govern the same basic question as the California anti-SLAPP statute, the motion-to-strike procedure created by the California anti-SLAPP statute cannot apply in federal court." *Id.* at *4. However, the undersigned has not yet had the opportunity to explicitly discuss the dismissal procedure of the TPPA and its significance in federal court.[16]

As there is still no Sixth Circuit case law on the applicability of dismissal procedures in anti-SLAPP statutes, like the TPPA, in federal court, the Court sees no reason to find differently now than it did in *Lampo Grp., LLC*. The reasoning of the Eleventh Circuit and D.C. Circuit remain persuasive. *See Lampo Grp., LLC*, No. 3:18-CV-01402, at *2 (citing *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1357 (11th Cir. 2018) ("Because Rules 8, 12, and 56 are valid under the Rules Enabling Act and the Constitution and govern the same basic question as the Georgia anti-SLAPP statute, the motion-to-strike procedure created by that statute cannot apply in federal court.") and *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1337 (D.C. Cir. 2015) ("A federal court exercising diversity jurisdiction therefore must apply Federal Rules 12 and 56 instead of the D.C. Anti-SLAPP Act's special motion to dismiss provision.")). For these reasons, the TPPA's

---

[16] This Court did previously handle a Defendant's argument that the TPPA should be applicable to an ongoing suit, but the Court determined that the TPPA was not relevant to that specific case since the case was filed before the statute took effect. *See Am. Addiction Centers, Inc. v. Nat'l Ass'n of Addiction Treatment Providers*, No. 3:19-CV-00376, 2021 WL 147044, at *1 (M.D. Tenn. Jan. 15, 2021) ("The Court is aware of issues relating to whether the TPPA can be applied in federal court. *See, e.g., Lampo Group, LLC v. Paffrath*, No. 3:18-cv-01402, 2019 WL 3305143 (M.D. Tenn. July 23, 2019).").

dismissal provision will not apply in federal court, and the Defendant's petition under the TPPA is denied.

## CONCLUSION

For the reasons indicated herein, the Defendant's Motion will be **GRANTED in part** and **DENIED in part.** Defendant's Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction will be denied, as will her petition under the Tennessee Public Participation Act. Defendant's Rule 12(b)(6) Motion to Dismiss for failure to state a claim will be denied as to Count I for Tortious Interference and Count VI for Intentional Infliction of Emotional Distress but granted as to Count IV for False Light.

An appropriate order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE