IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THOMAS E. SANTONI, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. 3:20-cv-00975 |
| | )    Judge Richardson/Frensley |
| SARAH ELIZABETH MUELLER, et al., | ) |
| | ) |
|     Defendants. | ) |

## ORDER

### I. INTRODUCTION

Plaintiff Thomas Santoni brought this action against Defendant Sarah Elizabeth Mueller and Does #1-3 alleging that Defendants violated various federal and Tennessee statutes by actions taken related to the Parties' interactions on the social media platform formerly known as Twitter. Docket No. 112 (First Amended Complaint). Ms. Mueller has denied the substantive allegations and asserted affirmative defenses. Docket No. 117.

This matter is now before the Court upon Mr. Santoni's "Second Motion for Order to Show Cause and for Civil Contempt and Second Motion for Sanctions for Spoliation of Electronic Evidence." Docket No. 150. Mr. Santoni has also filed a Supporting Memorandum and other supporting documents. Docket Nos. 151, 151-1 through 151-6. Ms. Mueller has filed a Response in Opposition and the Declaration of Sarah Mueller. Docket Nos. 159, 159-1. Mr. Santoni has filed a Reply and additional supporting documents. Docket Nos. 167, 167-1, 167-2. For the reasons set forth below, Mr. Santoni's Motion (Docket No. 150) is GRANTED.

## II. LAW AND ANALYSIS

### A. Compliance with Discovery Orders, Spoliation, and Sanctions Under the Federal Rules

#### 1. Discovery Sanctions

Rule 37 gives courts the authority to impose sanctions when parties fail to cooperate with a court order, including discovery orders and other orders under Rule 26(f), 35, or 37(a). Failure to obey a discovery order may lead to sanctions including an order:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

#### 2. Spoliation

Additionally, each party to civil litigation is required to preserve evidence that the party knows or should know may be relevant to current or future litigation. *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). Once a litigation hold is in place, "a party cannot continue a routine

2

procedure that effectively ensures that potentially relevant and readily available information is no longer reasonably accessible under Rule 26(b)(2)(B)." *Brown v. Tellermate Holdings Ltd*, No. 2:11-cv-1122, 2014 WL 2987051, 2014 U.S. Dist. LEXIS 90123, at *56 (S.D. Ohio Jul. 1, 2014).

"When a party destroys evidence in anticipation of litigation, the trial court may impose sanctions for spoliation." *Applebaum v. Target Corp.*, 831 F.3d 740, 744 (6th Cir. 2016). "A different standard for imposing sanctions, set by Rule 37(e), applies when the lost information is in electronic form." *EPAC Tech., Inc. v. HarperCollins Christian Publ'g, Inc.*, No. 3:12-cv-00463, 2018 U.S. Dist. LEXIS 53360, 2018 WL 1542040, at *11 (M.D. Tenn. Mar. 29, 2018), aff'd in part and modified in part, 2018 U.S. Dist. LEXIS 114620, 2018 WL 3322305 (M.D. Tenn. May 14, 2018). *See also* Fed. R. Civ. P. 37 Advisory Committee Notes to 2015 Amendments ("The new [Rule 37(e)] applies only to electronically stored information"). As amended, Rule 37(e) provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

3

Fed. R. Civ. P. 37(e).

Regardless of whether the spoliated evidence is tangible or ESI, a court must initially determine whether the party destroyed evidence after litigation became foreseeable. *See DriveTime Car Sales Co. v. Pettigrew*, No. 2:17-cv-371, 2019 U.S. Dist. LEXIS 66339, 2019 WL 1746730, at *3 (S.D. Ohio Apr. 18, 2019) ("In particular, *Beavin's* requirement that there must be an obligation to preserve at the time of destruction, and that the destroyed evidence must have been relevant to the claims or defenses of the party seeking sanctions, are left intact by amended Rule 37(e)").

Where a party is seeking an adverse inference as a spoliation sanction, the movant must show that the opposing party acted with "the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e). "A showing of negligence or even gross negligence will not do the trick." *Applebaum*, 831 F.3d at 745.

### 3. <u>Contempt</u>

The power to punish for contempt of court is one of the Court's strongest tools for the supervision and enforcement or its orders and is not used lightly. *Electrical Workers Pension Trust Fund of Local Union v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003). "Contempt proceedings enforce the message that court orders are to be complied with in a prompt manner." *Id.*, *citing NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987). Judicial sanctions, in turn, "may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947), *citing Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 448-49 (1911).

4

A litigant may be held in contempt if his adversary shows by clear and convicing evidence that he 'violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Cincinnati Bronze*, 829 F.2d at 591, *quoting SEC v. First Financial Group of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir. 1981). "The 'definite and specific' requirement guards against arbitrary exercises of the contempt power. Contempt cannot be based on a decree too vague to be understood, but is instead reserved for those who fully understand the meaning of a court order and yet choose to ignore its mandate." *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017) (internal quotation marks and citations omitted).

Once the movant establishes his prima facie case, the burden shifts to the alleged contemnor, who "may defend by coming forward with evidence showing that he is *presently* unable to comply with the court's order." *Gary's Elec. Serv. Co.*, 340 F.3d at 379, *citing United States v. Rylander*, 460 U.S. 752, 7575 (emphasis in original). A defendant's burden of production in raising this defense requires her to "show categorically and in detail why he or she is unable to comply." *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (citations omitted). The Court also considers whether the contemnor "took all reasonable steps within his power to comply with the court's order." *Peppers v. Barry*, 873 F.2d 967, 969 (6th Cir. 1989) (citations omitted).

B. <u>Mr. Santoni's Motion</u>

Mr. Santoni contends that Ms. Mueller has failed to comply with two of the Court's prior Orders and is in willful contempt of those Orders. Docket No. 150, p. 1, *citing* Docket Nos. 71, 107. The first of these (which Mr. Santoni calls "the Sanctions Order") was entered on September 3, 2021, and, in relevant part, orders the following:

> 1. [Ms. Mueller] is prohibited from destroying, altering, or hiding evidence related to her contacts with the forum giving rise to this Court's personal jurisdiction and [Mr. Santoni's] claims in this action;
>
> . . .
>
> 3. [Ms. Mueller shall be required to submit a list of devices, drives, and internet accounts that *at any point contained* and/or still contain electronic evidence relevant to this case and propose at least two independent IT professionals, one of whom will create digital forensic images of said devices at [Ms. Mueller's] expense . . . .

Docket No. 71, p. 6 (emphasis added).

Mr. Santoni also contends that Ms. Mueller violated an Order of the Court (designated by Mr. Santoni as "the Contempt Order") that was filed on June 23, 2022, and, in relevant part, orders Ms. Mueller to:

> 1. State, under penalty of perjury, a comprehensive accounting of every electronic device, drive, and internet account that *at any point contained* and/or still contains electronic evidence relevant to this case (including but not limited to electronic communications with [Mr. Santoni], under [Ms. Mueller's] own name or an alias) with a brief summary of the information contained, the dates, and its whereabouts, no later than July 7, 2022;
>
> 2. Physically submit all cellular phone(s), computer(s), and/or any other physical items listed in the aforementioned comprehensive accounting to Lighthouse Solutions in Scottsdale, Arizona or a comparable digital forensics contractor, for digital forensic imaging at [Ms. Mueller's] expense, no later than July 7, 2022 . . . .

Docket No. 107, p. 13-14 (emphasis added).

Mr. Santoni maintains that Ms. Mueller violated the Contempt Order because she did not submit the laptop computer that she used to interact with Mr. Santoni to the digital forensics contractor, instead submitting a different laptop that was purchased during course of this

litigation. Docket No. 151, p. 3. He argues that Ms. Mueller further violated that Order "because she has failed to provide '*a brief summary of the information contained, the dates, and whereabouts, no later than July 7, 2022*,'" in that she did not list the missing laptop. *Id.* at 22-23 (emphasis in original), *quoting* Docket No. 107. Mr. Santoni asserts that Ms. Mueller violated both the Contempt Order and the Sanctions Order when she removed internet data both from the new laptop and from her iPhone before submitting them to the digital forensics expert, ArcherHall. *Id.* at 14, *citing* Docket No. 141-1 (Declaration of Angela Malley, Senior Forensic Examiner at ArcherHall). Ms. Malley declares that, based on ArcherHall's analysis of the iPhone and laptop that Ms. Mueller submitted, "it is likely that web history was cleared." Docket No. 141-1, p. 2.[1]

Mr. Santoni requests:

> (1) that the Court enter an order setting a hearing (at the Court's earliest convenience) requiring [Ms. Mueller] to appear and show cause, if any she has, why she should not be held in contempt for violation of this Court's September 3, 2021 Order and/or the Court's June 23, 2022 Order; (2) that following the hearing and failure of [Ms. Mueller] to show cause, the Court hold [Ms. Mueller] in contempt of this Court's September 3, 2021 Order and/or the Court's June 23, 2022 Order and impose such sanctions as the Court deems appropriate, including entering judgment against [Ms. Mueller] on liability; (3) [Mr. Santoni] respectfully also requests an adverse inference jury instruction that the missing and/or destroyed evidence was relevant and would have been unfavorable to [Ms. Mueller]; (4) Mr. Santoni also respectfully requests that [Ms. Mueller] be precluded from relying on any of the unpreserved electronic evidence at trial; [i]n the alternative, (5) [Mr. Santoni] requests that [Ms. Mueller] be required to physically submit her missing *MacBook* laptop for forensic imaging at her expense; (6) [Mr. Santoni] requests that he be permitted to conduct written discovery and depose [Ms. Mueller] regarding the spoliated evidence and her lack of compliance with the Court's prior orders

---

[1] In this document, as well as her Second Declaration, Ms. Malley sets forth in detail the technical evidence that leads her to conclude that the web history was cleared from Ms. Mueller's laptop and iPhone. *See* Docket Nos. 141-1, 167-1.

7

> as complained of herein; and (7) [Mr. Santoni] requests the Court award his attorney fees and costs associated with the preparation and filing of this Motion . . . .

Docket No. 150, p. 3.

Ms. Mueller responds that she did not clear her internet data with the intent to violate the Court's Order, but rather, that she "cleared the cache to view her shows" because "tech support" told her that doing so would allow her to view her shows properly. Docket No. 159, p. 3; Docket No. 159-1 (Declaration of Sarah Mueller), p. 2 ("When I have had difficulties watching [Major League Baseball's] viewing, the MLB help support has told me to clear my cache and saved data."). Ms. Mueller has attached what appears to be a chat session with "MLB Fan Support" from April 7, 2022, wherein MLB Fan Support asks her, in response to her complaint that her T Mobile MLB subscription is not working, "can you try clearing your cache and saved data?" Docket No. 159-1, p. 6.

As for the missing laptop, Ms. Mueller asserts that after she received an upgraded laptop from Apple in February of 2021, she had to mail her old laptop back to Apple. Docket No. 159, p. 3, *citing* Docket No. 159-1, p. 1-2. She states that "[b]efore mailing her old laptop, [Ms. Mueller] transferred the data from that laptop to her new one," and that "[b]ecause [she] in good faith believes that the upgrade preserved and transferred the data from her old laptop to her new one, she only identified the new one in response to [Mr. Santoni's] jurisdictional interrogatory." *Id.* at 3-4. Ms. Mueller also asserts that she is presently unable to comply with an order requiring her to submit her old laptop because she mailed it back to Apple. *Id.* at 4.

The Court finds that, in clearing the web history from her iPhone and laptop, Ms. Mueller violated the Court's Order prohibiting her from "destroying, altering, or hiding evidence related to her contacts with the forum giving rise to this Court's personal jurisdiction and [Mr. Santoni's]

claims in this action." Docket No. 71, p. 6. The Court finds that she destroyed this evidence after litigation became foreseeable (indeed, it was during the course of the litigation) and while she had a duty to preserve it. The Court's Order specifically prohibiting Ms. Mueller from erasing electronic data related to "contacts with the forum giving rise to the Court's personal jurisdiction *and [Mr. Santoni's] claims in this action*" was issued on September 3, 2021. Docket No. 71, p. 6 (emphasis added). The Court's Order commanding Ms. Mueller to "[s]tate, under penalty of perjury, a comprehensive accounting of every electronic device, drive, and internet account that at any point contained and/or still contains electronic evidence relevant to this case" and "[p]hysically submit" all such devices to a digital forensics expert was issued on June 23, 2022. Docket No. 107, p. 13. It appears that Ms. Mueller erased her internet history three days later, on or around June 26, 2022. *See* Docket No. 159-1, p. 3 (Ms. Mueller's Declaration, in which she indicates that she "cleared her cache" on June 26, 2022); Docket No. 141-1, p. 3 (Ms. Malley's Declaration, stating that the technical evidence "indicates that the web history [of both Ms. Mueller's iPhone and her laptop] was likely cleared on or before June 26, 2022").

Ms. Mueller essentially concedes as much, arguing only that "there is not enough in the record to establish specific intent" on the part of Ms. Mueller when she cleared her internet history from both her phone and her laptop, three days after the Court ordered her to submit her devices, "to watch Major League Baseball." Docket No. 159, p. 4-5.

As to Ms. Mueller's argument that she acted without the requisite intent, Mr. Santoni has submitted the Second Declaration of Angela Malley, in which Ms. Malley explains:

> To test [Ms. Mueller's] statement that she cleared her "cache and saved data" on June 26, 2022 to watch baseball from MLB.com, I performed a search of the forensic data from the iPhone 11 and the *MacBook Air*. If [Ms. Mueller's] story were correct, one would expect there to be records from MLB.com in the saved data and internet histories occurring after June 26, 2022 on those devices.

9

> The forensic data from [Ms. Mueller's] *MacBook Air* contained no results from its bookmarks, cache, or web history for MLB.com occurring before or after June 26, 2022. However, there were two cookies from MLB.com dated June 18, 2022 which would be eight days before [Ms. Mueller's] declaration states she cleared the "cache and saved data." There are no results for "MLB.com" in the web history on the iPhone. However, there were six results in the cookies. There are, however, no cookies on the iPhone dated after June 27, 2022.

Docket No. 167-1, p. 4 (numbering omitted).

Based on this evidence, the Court is unpersuaded by Ms. Mueller's statement that she erased the internet history from her devices on June 26, 2022, in order to watch baseball, and finds that instead, Ms. Mueller acted with intent to deprive Mr. Santoni of the use of that history in this litigation.

The Court also finds that, in failing to submit to ArcherHall the laptop that she used to interact with Mr. Santoni, Ms. Mueller violated the Court's Order requiring her to:

> 1. State, under penalty of perjury, a comprehensive accounting of every electronic device, drive, and internet account *that at any point contained and/or still contains* electronic evidence relevant to this case (including but not limited to electronic communications with [Mr. Santoni], under [Ms. Mueller's] own name or an alias) with a brief summary of the information contained, the dates, and its whereabouts, no later than July 7, 2022;
>
> 2. Physically submit all cellular phone(s), computer(s), and/or any other physical items listed in the aforementioned comprehensive accounting to Lighthouse Solutions in Scottsdale, Arizona or a comparable digital forensics contractor, for digital forensic imaging at [Ms. Mueller's] expense, no later than July 7, 2022 . . . .

Docket No. 107, p. 13 (emphasis added).

This Order clearly states that all of Ms. Mueller's devices (including computers) must be submitted if they "at any point" contained relevant information. It is not ambiguous.

The Court further finds that Ms. Mueller failed to provide her laptop to ArcherHall with the intent to deprive Mr. Santoni of the use of information on the laptop in this litigation. The Court is unpersuaded by Ms. Mueller's assertion that she considered the old laptop (which she used to interact with Mr. Santoni) to be the same as the new one she purchased during the course of this litigation because she believed that all the data had been transferred from the old laptop to the new one. The Court's Order speaks of submitting "devices," "cellular phone(s), computer(s), and/or any other *physical items*," not of submitting "data."[2] Docket No. 107, p. 13 (emphasis added). Further, Ms. Mueller has not offered any evidence to contradict Ms. Malley's assertion that "[t]he owner of an older *MacBook Pro* laptop who is transferring data to their new *MacBook Air* laptop is in control of what data they transfer to the new computer. Accordingly, without having access to [Ms. Mueller's] *MacBook Pro* for analysis, it is not possible to determine how much of its data was or was not transferred to [Ms. Mueller's] new *MacBook Air* laptop." Docket No. 167-1, p. 2. The Court finds that she destroyed this evidence after litigation became foreseeable (indeed, it was during the course of the litigation) and while she had a duty to preserve it.

The Court does not make these findings in isolation. They are part of Ms. Mueller's well-documented pattern of disengagement from this lawsuit and failure to comply with basic discovery obligations and the orders of this Court. The Court has previously set forth the history of Ms. Mueller's conduct and has issued multiple orders in an attempt to persuade Ms. Mueller of the necessity of changing her approach to this litigation. These orders have attempted to provide guidance to Ms. Mueller without being unnecessarily punitive. Docket Nos. 71, 107,

---

[2] Ms. Mueller does not dispute that her old laptop contained relevant information. *See* Docket No. 159.

135. Unfortunately, these efforts have been unavailing, and the Court must proceed to harsher sanctions.

Therefore, the Court finds Ms. Mueller to be in contempt of its prior orders and will impose sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(A). Docket Nos. 71, 107. Ms. Mueller has violated two definite and specific Orders of the Court, of which she was certainly aware. Furthermore, Ms. Mueller has spoliated evidence, leading to sanctions as set forth by Fed. R. Civ. P. 37(e). The Court will impose the sanctions set forth below.

The Court will not enter judgment on liability against Ms. Mueller at this time, prior to the submission of dispositive motions. The Court does not yet have evidence on liability in front of it, and courts of this Circuit "generally disfavor disposing of cases based upon procedural default and favor deciding cases on the legal merits." *See, e.g.*, *Murdock v. Bruce*, No. 3:13-1244, 2015 WL 998244, 2015 U.S. Dist. LEXIS 27698, at *9 (M.D. Tenn. Mar. 6, 2015).

The Court will also refrain from ordering Ms. Mueller to physically submit the missing laptop, as Mr. Santoni requests, because it is manifestly evident that Ms. Mueller no longer has possession of the laptop. Finally, the Court will not permit Mr. Santoni to conduct discovery about discovery, whether written or otherwise, regarding the spoliated evidence and Ms. Mueller's lack of compliance with the Court's orders. There is no need for further discovery into these matters because the Court has addressed them herein and will provide the requisite consequences. Further information will only be "discovery about discovery" and will not change the Court's position as to the appropriate sanctions.

### III. <u>CONCLUSION</u>

For the foregoing reasons, Mr. Santoni's Motion (Docket No. 150) is GRANTED. In any trial of this matter, the jury will receive an adverse inference instruction that the missing and/or

destroyed evidence was relevant and would have been unfavorable to Ms. Mueller. Ms. Mueller is also precluded from relying on any of the unpreserved electronic evidence at trial or in a dispositive motion or a response to a dispositive motion. Finally, the Court will award Mr. Santoni his attorney's fees and costs associated with the preparation and filing of this Motion unless, no later than April 4, 2024, Ms. Mueller makes a filing with the Court establishing that fees should not be awarded pursuant to the factors set forth in Fed. R. Civ. P. 37(a)(5)(A).

**IT IS SO ORDERED.**

_____
Jeffery S. Frensley
United States Magistrate Judge

13